UPPER MISSOURI G & T ELECTRIC COOPERATIVE, INC., A CORPORATION, PLAINTIFF AND APPELLANT, *v.* McCONE ELECTRIC CO-OP., INC., A CORPORATION, DEFENDANT AND RESPONDENT.

No. 11969.
Submitted April 14, 1971.
Decided May 7, 1971.
484 P.2d 741.

V. G. Koch, argued, Sidney, for plaintiff-appellant.

Sandall, Moses & Cavan, Jerome J. Cate, argued, Billings, for defendant-respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a summary judgment entered on orders dated July 17, 1970 and October 2, 1970, which orders included findings, conclusions and a judgment in six parts.

Plaintiff is a corporation formed in April 1958 by a group of electric distribution cooperatives, including the defendant McCone Electric Co-op., Inc.

In 1958, McCone joined with eleven other organizations and cooperatives to form plaintiff corporation. The purpose of this corporation was to engage in the generation, manufacture, acquisition and transmission of electric energy, and for the distribution, sale, supply, and disposition of electric energy. The incorporators were Lower Yellowstone REA of Sidney, Montana; Goldenwest Electric of Wibaux, Montana; Northern Electric of Opheim, Montana; Sheridan County Electric, Medicine Lake, Montana; Big Flat Electric, Malta, Montana; Southeast Electric, Ekalaka, Montana; Verendrye Electric, Velva, North Dakota; Mountrail Electric, Stanley, North Dakota; Williams Electric, Williston, North Dakota; Burke-Divide Electric, Columbus, North Dakota; McKenzie Electric, Watford City, North Dakota; and McCone Electric, Circle, Montana, defendant here. The business affairs are managed by a board of directors, one

from each of the members, including defendant McCone. Apparently, one or more of these original incorporators are no longer members.

Hereinafter the United States Bureau of Reclamation will be referred to as the ''Bureau'' and the Basin Electric Power Cooperative as ''Basin.'' The Bureau and Basin were parties to contracts supplying power to plaintiff.

Plaintiff brought this action in the District Court of the Seventh Judicial District, Richland County. The action was for declaratory judgment to determine (1) the validity of a wholesale power contract between the plaintiff and defendant, (2) the legal effect of a statement of withdrawal by defendant from membership in plaintiff, and, ancillary to these issues, (3) plaintiff sought supplementary relief by way of a restraining order.

A motion to dismiss, an answer, and counterclaim were filed, pretrial conference was had, and thereafter both parties moved for summary judgment. The defendant's answer contained fifteen defenses and three counterclaims. To those defenses there was a general denial by plaintiff raising the issues that they did not state a claim or defenses; and, they are barred by the statute of limitations, laches and estoppel.

Attached to plaintiff's complaint were exhibits A through K consisting of documentary proof of the contract involved. Also subsequently introduced by plaintiff to support its application for injunctive relief were exhibits 1 through 17 consisting of correspondence between plaintiff, defendant, the Bureau, and Basin in the year 1969. As a general statement, all of these letters concern defendant's efforts to break the contract with plaintiff and buy its power needs direct from the suppliers, including the Bureau and Basin.

As stated heretofore, motion for summary judgment was made by both parties. The motions were briefed and argued. On July 17, 1970, Judge Nat Allen made formal findings of fact, conclusions of law and judgment. The court's judgment provided:

"I. That plaintiff is not entitled by law to the relief prayed for in its complaint the contracts herein not being proper subjects for specific performance and its Motion for Summary Judgment is denied.

"II. That the contracts between the parties have been terminated by McCone Electric Cooperative pursuant to Sections 4 and 5 of Article I of the by-laws by giving notice and refusing to purchase electrical energy.

"III. That defendant's Motion for Summary Judgment is granted.

"IV. That the Clerk of this Court forthwith pay to defendant all sums it has paid into Court pursuant to previous stipulation still remaining in the Clerk's possession.

"V. That the plaintiff forthwith pay back to the defendant all sums previously and erroneously paid to plaintiff by the Clerk of Court pursuant to previous order of this Court which order was in error.

"VI. That plaintiff may bring an action at law for damages, if any, that it has sustained as a result of the termination of these contracts."

After the entry of this judgment, plaintiff filed a motion to alter, amend and supplement findings of fact, conclusions of law and judgment and then proceeded to disqualify Judge Nat Allen from this action. Judge Paul G. Hatfield, district judge of the Eighth Judicial District, assumed jurisdiction. The motion came on for hearing before Judge Hatfield. This particular motion, considered by Judge Hatfield, should be set out at this time because it basically involved the same arguments and issues plaintiff is now raising before this Court. That motion was based on the following reasons:

"1. That at the hearing on the 10th day of July, 1970, in Billings, Montana, before this Court, plaintiff understood that Judgment would be entered on behalf of Plaintiff, decreeing that the contract between the parties was valid and subsisting.

"2. There is no testimony or exhibits of record to substantiate the Findings of Fact and Conclusions of Law upon which the Court's Judgment is based.

"3. While the language of the Court's order implies that plaintiff may bring legal action for damages and thereby implies that its contract is valid and binding, the denial completely of its motion for summary judgment and the granting of the defendant's motion for summary judgment, which is in the nature of a dismissal of the action, would appear to nullify this implication.

"4. That no disposition has been made of the numerous defenses and crossclaims of defendant and it cannot be determined whether the Court, in totally overruling plaintiff's motion, intends to allow said cross-claims and defenses to stand.

"5. That the Order of Judgment controverts and is not responsive to the prayers contained in plaintiff's complaint or its motions.

"6. That the multiplicity of suits contemplated in forcing each monthly bill, the difficulty of computing damages and other matters set forth in the proceedings of the cause, will enable plaintiff to an injunction."

At this time it should be noted that this motion to vacate the order of summary judgment is similar to a previous motion to vacate order of summary judgment which had been filed by the plaintiff on March 17, 1970, and had already been considered by the court. Over objection of the defendant, this second motion to alter, amend and supplement findings was brought on for hearing before Judge Hatfield on August 26, 1970. Judge Hatfield reviewed the entire court file, heard oral argument, affirmed the findings of Judge Allen, and ordered, adjudged and decreed as follows:

"That notwithstanding that some of the matters contained in the Court's second amended order are not supported by the actual evidence properly before the Court, the basic conclusion of the Court is true and correct and sustainable on the evidence properly before the Court on the motions decided and the

motion of the plaintiff to alter, amend and supplement findings of fact, conclusions of law and judgment is therefore denied."

This order of Judge Hatfield was dated October 2, 1970. Thereafter notice of appeal was filed by the plaintiff, and the matter is now before this Court.

The issues on appeal are:

(1) The court erred in that there is insufficient evidence to support the findings, conclusions and judgment. The judgment is not responsive to the pleadings.

(2) The court erred in granting defendant's motion for summary judgment and in denying plaintiff's motion for summary judgment.

(3) The court erred in not granting plaintiff's motion for injunctive relief.

We shall consider issues 1 and 2 together. It is with some difficulty that we discuss the facts because, as Judge Hatfield noted in his judgment, there was no evidence to support some of Judge Allen's findings. Yet, Judge Hatfield concluded that the basic conclusion was true and correct! Plaintiff had alleged the various contracts with defendant and the other parties. Defendant does not deny the contracts, but contends invalidity of the contracts or alternatively that the contracts were terminated.

While, under Rule 52(a), M.R.Civ.P., findings of fact and conclusions of law are unnecessary in decisions on summary judgment, we find here that an analysis of the findings determines the correctness of the summary judgment involved. As we remarked before, our analysis will often show no evidence—that is the negative.

Finding No. I briefly covers the formation of plaintiff corporation and its stated purpose to work for the "generation, manufacture, acquisition and transmission of electric energy, and the distribution, sale, supply and disposition of electric energy to its members." It goes on to state that this electric energy would be from power sources in the Upper Missouri river area. There is no evidence to support this area limitation.

Finding No. II is, in part, that it was not in contemplation of the members of the plaintiff that power would be purchased from Basin or that any assets would be pledged. There is no evidence or admissions to support this.

Finding No. III: "That after the formation of Upper Missouri G & T the McCone Electric Cooperative assigned its Bureau of Reclamation power contract to Upper Missouri G & T as did all the other members of the newly formed Upper Missouri G & T. On October 16, 1959, McCone Electric Cooperative and Upper Missouri G & T executed what is entitled a Wholesale Power Contract under which McCone agreed to purchase all its power needs from Upper Missouri G & T for a period of 35 years from that date except for certain exceptions not of importance here." This finding is supported by the pleadings and exhibits.

Finding No. IV: "That in 1959, at the time of the execution of the Wholesale Power Contract with Upper Missouri, it was not anticipated or contemplated by McCone Electric that power would be purchased from a North Dakota corporation cooperative such as Basin Electric." There is simply no evidence to support this finding.

Finding No. V: "That at the time, or shortly after the Wholesale Power Contract with Upper Missouri was executed in 1959, a definite rate schedule was established for the power to be purchased from Upper Missouri which was then acceptable to McCone Electric Cooperative. This rate schedule was $1.00 per KWH of billing demand per month, plus 3½ mills per KWH for all energy." There is no evidence to support the finding that the rates were definite and fixed. On the contrary, the contract provides for an annual review of the rates.

Finding No. VI: "That from 1959 to 1962 Upper Missouri did lend its efforts toward development of Upper Missouri as originally contemplated by the parties. However, in May of 1962, Upper Missouri G & T, over the objection of McCone's Trustee on the Board of Upper Missouri G & T and over the objections of the Board of Trustees of McCone Electric Cooperative, entered into a Wholesale Power Contract with Basin

Electric Cooperative of North Dakota for the purchase of thermal produced electric power from Basin.'' There is simply no evidence that defendant's trustee on plaintiff's board of trustees objected to the Basin contract, although one of defendant's defenses asserts this.

Finding No. VII: ''That at the time of the execution of this agreement with Basin Electric and by means of a letter dated June 11, 1962, McCone Electric informed Upper Missouri G & T that it wished to withdraw its membership in Upper Missouri G & T. McCone Electric was at that time informed by Upper Missouri G & T that it could not withdraw membership although Upper Missouri refused or failed to take any formal action on their request at that time.'' Again, there is simply no evidence in the record. In reviewing this finding, this appellate Court wonders where part of this information came from. It is not in the record.

Finding No. VIII: ''That in December of 1965, a new Wholesale Power Rate Schedule (Rate Study 1) was adopted by Upper Missouri G & T contrary to the by-laws of McCone Electric and over the objections of McCone Electric Cooperative.'' Again, no such evidence.

Finding No. IX: ''That this new rate schedule was then and is now not fair, just and equitable to McCone Electric Cooperative because, under this schedule McCone is obligated to pay for wheeling costs of electric power over Montana-Dakota Utility lines in North Dakota, which wheeling charges are incurred by other members of Upper Missouri G & T for delivery of Basin Electric Cooperative power to them. That McCone Electric Cooperative itself incurs no such charges and, in effect, was and is required by this rate schedule to pay for the cost of wheeling over Montana-Dakota Utility line, other cooperative's power.'' The rate schedule is not in evidence.

Finding No. X: ''That McCone Electric Cooperative at that time offered various alternative rate schedules which it believed would be fair and equitable to all the members of Upper Missouri G & T and these were rejected by a majority of the mem-

bers of Upper Missouri G & T Board of Trustees. That there-after Upper Missouri G & T pledged McCone Electric Coopera-tive's property in the form of capital credits in Upper Missouri G & T as security for a 97 million dollar loan to Basin Electric Cooperative of North Dakota from the Rural Electrification Administration. This pledging of McCone Electric Cooperative's assets by Upper Missouri was over the objection of McCone Electric's Trustee on the Board of Upper Missouri G & T and was over the objection of McCone Electric Cooperative's Trustees and members and contrary to the by-laws of McCone Electric Cooperative, Article VIII which states:

'The Cooperative may not sell, mortgage, lease or otherwise dispose of or encumber all or any substantial portion of its property unless such sale, mortgage, lease or other disposition or encumbrance is authorized at a meeting of the members thereof by the affirmative vote of not less than two-thirds of all of the members of the Cooperative, and unless the notice of such proposed sale, mortgage, lease or other disposition or en-cumbrance shall have been contained in the notice of the meet-ing.' ''

There is no evidence of alternate rate proposals, no evidence of a present pledging other than the proposals contained in Ex-hibit I which does not show a present pledging in the sense that the finding indicates.

Finding No. XI: ''That this pledging of their assets also was not within the contemplation of the parties to the original for-mation of Upper Missouri G & T.'' There is no evidence as shown above.

Finding No. XII: ''That after the pledging of these assets on the 10th day of March, 1969, McCone Electric Cooperative, by means of a letter, a copy of which is attached as Exhibit K to the plaintiff's complaint, advised Upper Missouri G & T that it would terminate its membership with plaintiff pursuant to Sections IV and V of Article I of Upper Missouri's by-laws ef-

fective on the meter reading date of the Bureau of Reclamation in June, 1969." There is evidence in the form of exhibits which does show this.

Finding No. XIII: "That on the 15th day of May, 1969, the Board of Trustees of Upper Missouri G & T met and refused to release the defendant from membership in Upper Missouri G & T contrary to the by-laws and refused to set forth any equitable terms or conditions upon which McCone might withdraw from membership in Upper Missouri G & T." This is supported by the exhibits except as to the conclusion that it was contrary to the by-laws.

Finding No. XIV: "That subsequent, thereto, McCone Electric proceeded to execute its right to terminate membership under Article I Section 4, of the by-laws of Upper Missouri G & T by refusing to pay for the power tendered to it by Upper Missouri G & T." Here there is evidence that defendant tried to terminate, but none that it had such a "right" by "refusing to pay."

Finding No. XV: "That thereafter this action was brought by Upper Missouri G & T asking a declaratory judgment on the alleged Wholesale Power Contract and an injunction against McCone Electric from violating any of the terms of the alleged Wholesale Power Contract between Upper Missouri G & T and McCone." This is supported.

The court then went on to make fifteen conclusions of law, based upon the findings heretofore discussed, which are only supported in Findings No. III, XII, XIII, and XV in part. The main thrust of the conclusions is that somehow the Wholesale Power Contract between the parties is against public policy, in restraint of trade and therefore illegal, and is void and unenforceable.

The conclusions even go further to conclude "failure of consideration," "fraud," and that assent to the contract in question was given under "influence of misapprehension."

As we have stated before, and as we have shown on the in-

dividual findings, we are dealing with what does not appear in the record. The findings are remarkable because a search of this record leaves one wondering where they came from. The only apparent answer to our dilemma is that the allegations contained in the defenses and crossclaims were taken as true—even though they were denied.

Since much of the controversy swirls around Sections 4 and 5 of Article I of the by-laws of Upper Missouri G & T, we shall set them out. We recognize the danger of the two sections not being read in context with the entire package, but their quotation will suffice for our purpose here.

Section 4 provides in part:

"*Purchase of Electric Energy.* Any member, including an incorporator, shall cease to be a member of the Federation if it shall refuse to purchase electric energy tendered to such member by the Federation    *    *    *.''

Section 5 provides in part:

"Termination of membership. (a) A member may withdraw from membership upon compliance with such equitable terms and conditions as the board of trustees may prescribe, provided, however, that no member shall be permitted to withdraw until he has met all of its or his contractual obligations to the Federation.    *    *    *''

The exhibits show that defendant continued to receive power, tried to negotiate separately for the same power, and only refused to *pay* for it. Section 4, under a reasonable interpretation, was intended to govern the members before any of the contracts were entered into. Section 5 clearly gives the board of trustees the right to set reasonable conditions; and, more than that, no right where the contractual obligations have not been met by defendant.

Finally, the conclusions concerning public policy, restriction of trade, and fraud simply do not appear. The brief of respondent McCone states:

"The contracts in this case are against public policy and the public good and are in restraint of trade because they result

in a significant portion of the population of eastern Montana having to pay additional costs for their electricity over the term of the contract and in that they prohibit McCone Electric in contracting with other and cheaper sources of power developing coal reserves and power sources within the state of Montana * * * ."

If every contract could be declared void because of a showing by an individual, a group of individuals that they could save money by breaking it, chaos would result. Ten years after the contract, initiated and inspired, we are told, by defendant, defendant now wants a better deal elsewhere. It is as simple as that.

Be that as it may, the propriety of the district court granting summary judgment on this basis, as related heretofore, is obviously not supported by the record.

To further show the confusion, following the findings and conclusions a judgment in six parts, as previously quoted, was entered, the sixth part being:

"That plaintiff may bring an action at law for damages, if any, that it has sustained as a result of the termination of these contracts."

This recognizes the contract for power as a valid one, contrary to the other findings and conclusions. Additionally, here the defendant counterclaimed for damages in the sum of $153,600. No disposition was made of this counterclaim.

From our recitation and discussion of each finding, it is apparent that the findings are not supported by the record. This being so, and the summary judgment being entered obviously on the basis of the findings, the summary judgment was improperly entered and accordingly is vacated.

Also contained in issue No. 2 is whether the plaintiff was entitled to summary judgment. It seems apparent from our discussion heretofore that there are many fact issues unresolved. One item in particular stands out. Exhibit I, attached to the complaint, is a collection of documents beginning with a resolu-

tion entitled ''Pledging Funds to Basin Electric Power Coopera-
tive to assist the Financing of Certain Transmission Facilities.''
This resolution would appear to commit plaintiff to secure an
amount of $100,000 by the year 1972 if called upon. The resolu-
tion is followed by an agreement between plaintiff and Basin
which contemplates approval by the Bureau before it is effec-
tive; and which agreement, at least at this stage of the proceed-
ings, may never become effective. Defendant refers to Answers
to Interrogatories to supply some of the proof. No Answers to
Interrogatories appear in the file.

We shall not go further in attempting to analyze Exhibit I nor
its effect on the issues other than to conclude the plaintiff was
not entitled to summary judgment, there being fact issues un-
resolved.

The third issue remains. That issue is whether the court
erred in not granting plaintiff's motion for injunctive relief.

Plaintiff urges this Court to order injunctive relief. However,
inasmuch as the district court is being reversed on the summary
judgment discussed hereinbefore, it is clear that no consideration
was given in that court to the propriety of injunctive relief at
all. Now, however, on remand, that court is the proper forum
to grant any interlocutory or permanent injunctive relief neces-
sary and proper, and to have and continue jurisdiction in all
respects. Accordingly, we will not assume to consider the third
issue here.

By what we have said heretofore, the summary judgment is
vacated and the cause remanded for further proceedings. We
note here that a motion to dismiss by defendant was made on
the basis that no exceptions were made. Recalling that twice
motions to amend and alter the findings were made, it is clear
that the present motion to dismiss is not meritorious and it is
therefore denied.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR.
JUSTICES JOHN C. HARRISON, HASWELL, and DALY,
concur.