No. 12201

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

---

UPPER MISSOURI G. &. T. ELECTRIC COOPERATIVE,
INC., a corporation,

                    Plaintiff and Respondent,

-vs-

McCONE ELECTRIC CO-OP, INC., a corporation,

                    Defendants and Appellants.

---

Appeal from: District Court of the Seventh Judicial District,
                Honorable Paul G. Hatfield, Judge presiding.

Counsel of Record:

    For Appellants:

        Sandall, Moses and Cavan, Billings, Montana.
        Jerry Cate argued, Billings, Montana.

    For Respondent:

        V. G. Koch argued, Sidney, Montana.

---

                Submitted: September 26, 1972

                Decided: NOV 30 1972

Filed: NOV 30 1972

*Thomas J. Kearney*
              Clerk

Mr. Justice Wesley Castles delivered the Opinion of the Court.

This is an appeal from a summary judgment for Upper Missouri G & T Electric Cooperative, Inc. (hereinafter referred to as Upper Missouri).

This case has been before this Court previously in Upper Missouri G & T Electric Cooperative, Inc. v. McCone Electric Co-op, Inc., 157 Mont. 239, 484 P.2d 741. In that case we found summary judgment should not have been granted McCone Electric Co-op, Inc. (hereinafter referred to as McCone), and remanded the cause to the district court.

Following remand, further discovery, and pretrial proceedings were had. Upper Missouri then filed a motion for summary judgment, which read:

"COMES NOW the plaintiff and cross-defendant herein, and moves the Court, pursuant to Rule 56, Montana Rules of Civil Procedure, for Summary Judgment declaring the contract between plaintiff and defendant, and all thereof, a valid and subsisting contract, for the following reasons:

"1. That there is no genuine issue as to any material fact and that plaintiff is entitled to Judgment as a matter of law;

"2. That defendant's defenses and counter-claims are barred by the statute of limitations and laches;

"3. That the defenses and counter-claims of defendant are insufficient, sham, frivolous and immaterial, and therefore, be stricken under Rule 12 (f) Montana Rules of Civil Procedure.

"That the foregoing Motions are based upon the pleadings, exhibits, written interrogatories, pre-trial and general admissions, and depositions on file and of record in this cause."

The court entered the following judgment:

"The above entitled matter having come on regularly for hearing before the above entitled Court upon motion of plaintiff for Summary Judgment, and the Court having entered its Findings of Fact and Conclusions of Law:

"IT IS ORDERED, ADJUDGED AND DECREED:

"1. That the Motion for summary Judgment of plaintiff be and hereby is granted.

"2. That the wholesale power contract between the plaintiff and defendant is valid, binding and subsisting.

"3. That the notice of withdrawal submitted to plaintiff by the defendant is of no legal effect.

"4. That the counterclaims and defenses of defendant be and hereby are dismissed."

On this appeal appellant McCone sets up a single issue—the correctness of the summary judgment in that it contends there are still substantial material facts in dispute and summary judgment should not have been granted. Basically, the issue revolves around the validity of a long term wholesale power contract under which McCone agreed to purchase its power needs from respondent Upper Missouri for a period of 35 years. The contract was approved in 1959.

McCone seems to assert that the articles and by-laws of Upper Missouri did not permit Upper Missouri to enter into a wholesale power contract with Basin Electric Power Cooperative, (hereinafter referred to as Basin).

Nine electric distribution cooperatives, including McCone, banded together to form Upper Missouri cooperative and obtained a charter in April 1958. In May 1958, the trustees of Upper Missouri, including the trustee representative of McCone, adopted by-laws. The reason for the formation of Upper Missouri is best stated in the resolution of McCone passed in October 1959, authorizing the assignment of certain United States Bureau of Reclamation (hereinafter referred to as Bureau) power to, and authorizing the execution of the contract with Upper Missouri. This resolution states in part:

"WHEREAS, McCone Electric Co-op, Inc. may be faced with a severe electric power and energy shortage in the near future; and, * * *

"WHEREAS, this Cooperative believes that it is the proper role for Upper Missouri to accept the full utility responsibility and furnish and provide the electric power and energy needed within its service area by this cooperative; and, * * *

- 3 -

"WHEREAS, it appears now, that the Bureau of
Reclamation will not fulfill the requirements
of this Cooperative in the future, and

"WHEREAS, it is desirable from a technical and
economic standpoint that Upper Missouri arrange
and negotiate for supplemental power for its
members; and * * *

"WHEREAS, it is deemed to be necessary and in
the best interest of this Cooperative to have
Upper Missouri supply all the present and future
electric power and energy requirements of this
Cooperative within the Upper Missouri service
area * * *."

The assignment of the Bureau contract was executed on

October 16, 1959, by McCone and approved on November 24, 1959,

by the Bureau. Also, on October 16, 1959, McCone executed

the contract in question, and the approval of the Rural Electri-

fication Administration was endorsed thereon dated November 30,

1959. Under this contract, McCone agreed to purchase its power

and energy requirements from Upper Missouri until December 31,

1994, and to pay rates as established under paragraph 4(b)

of the contract, which provides:

"(b)  The Board of Trustees of Upper Missouri at
such intervals as it shall deem appropriate, but
in any event not less frequently than once in each
calendar year, shall review the rate for electric
power and energy hereunder and under similar agree-
ments with other member cooperatives and, if neces-
sary shall revise such rate so that it shall produce
revenues which shall be sufficient, but only suffi-
cient, with the revenues of Upper Missouri from all
other sources to pay all overhead and meet the cost
of the operation and maintenance of the transmission
system, generating plant and related facilities of
Upper Missouri, the cost of transmission service,
the cost of any power and energy purchased for re-
sale hereunder by Upper Missouri, pay taxes, make pay-
ments on account of principal of and interest on all
indebtedness of Upper Missouri, and to provide for
the establishment and maintenance of reasonable reserves
* * *.  The consumer agrees that the rate from time to
time established by the Board of Trustees of Upper
Missouri shall be deemed to be substituted for the
rate herein provided and agrees to pay for electric
power and energy furnished by Upper Missouri to it
hereunder and after the effective date of any such
revisions at such revised rates; provided, however,
that no such revision shall be effective unless approved
by the Administrator."

From the pretrial order, McCone has admitted:

"* * * that all rates were established by a majority

- 4 -

of the board of plaintiff and were approved by
the Rural Electrification Administration."

Upper Missouri rented offices at Sidney, Montana, and hired
management. Upper Missouri thereafter entered into long term
contracts with the Bureau to purchase hydrogenerated power.
When it determined that the Bureau could not supply the needs of
its members, it entered into membership and a cooperative agree-
ment to purchase thermo-generated power with Basin on a long
term basis, and thereby participate in generation and direction
as a member of this organization. On March 10, 1969, McCone
advised Upper Missouri that it would terminate its membership
effective on the meter reading date of the Bureau in June 1969,
and proceeded with attempts to obtain direct delivery of power
from Upper Missouri suppliers. This action was thereafter in-
stituted.

Referring back to the quoted parts of McCone's resolution,
it is seen that there is nothing that even remotely suggests any
limitation as urged by McCone.

McCone urges that in 1959, at the time of the wholesale
power contract with Upper Missouri, it was not contemplated that
Upper Missouri would in the future contract to purchase power
from Basin. Rather, McCone contends, it was contemplated that
hydro-electric generating dams would be built on the upper
Missouri river. Perhaps these contemplations were in the minds
of some of the incorporators; but the resolution concerned power
needs through a cooperative power supply entity from any source.

We have examined the wholesale power contract and find that
it is enforceable under its terms. The previous opinion of this
Court sets out some of the pertinent and relevant provisions and
will not be repeated here. In that opinion, appearing at 157
Mont. pp. 249,250 and 484 P.2d pp. 746, 747, we said:

"Finally, the conclusions concerning public policy,
restriction of trade, and fraud simply do not
appear. The brief of * * * McCone states:

"'The contracts in this case are against public policy and the public good and are in restraint of trade because they result in a significant portion of the population of eastern Montana having to pay additional costs for their electricity over the term of the contract and in that they prohibit McCone Electric in contracting with other and cheaper sources of power developing coal reserves and power sources within the state of Montana * * *.'

"If every contract could be declared void because of a showing by an individual, a group of individuals, or even a significant portion of individuals that they could save money by breaking it, chaos would result. Ten years after the contract, initiated and inspired, we are told, by defendant [McCone], defendant [McCone] now wants a better deal elsewhere. It is as simple as that."

The foregoing statement of this Court is applicable here. There is no showing that the power contract is against public policy or in restraint of trade. There is nothing in the pleadings or the documents on file that would even remotely indicate that the by-laws were against public policy or the public good, but are ordinary by-laws, adopted with McCone's knowledge and consent.

Upper Missouri did not perform acts detrimental to McCone which were outside the original contemplation of the parties. Upper Missouri became a member of Basin to obtain a power supply for its members. On cooperative principles Upper Missouri is a part owner of Basin's generation and transmission system which entitled Upper Missouri to a seat on the Basin board. Under the charter and by-laws, each of the nine cooperatives have a trustee upon the Upper Missouri board. Certainly one trustee cannot prevent the taking of action and entering into agreements, which the others believe will benefit the cooperative as a whole.

The entire background, resolution and contract indicate unequivocally that the purpose at the time was to obtain an adequate power supply to avoid a power shortage, and that Upper Missouri was to undertake the task to see that this did not happen. Upper Missouri fulfilled its part of the bargain; it has obtained and supplied that power. Now, many years after

- 6 -

the fact, McCone is attempting to vary by parol evidence the unimpeachable intent of the parties, as evidenced by the resolution and the contract. That a signatory to the Articles of Incorporation, by-laws and other documents should, ten years later, accuse Upper Missouri of undue influence and fraud is unrealistic.

The circumstances and purpose of the contract before the Court differ considerably from the restraint of trade cases cited by McCone. McCone, with eight other cooperatives, banded together to form an electric power supply cooperative to supply power, each having a member trustee on the board and each becoming an owner of Upper Missouri; the contract was entered into not to create a monopoly, fix prices nor limit competition, but to avoid a shortage of power which was foreseen to be certain to occur if an additional source of power was not found.

McCone has taken power and operated under the contract and rates for ten years and should now be estopped to deny what has been established by contract and performance.

The findings of fact and conclusions of law support the judgment, and there are no material facts in issue. The ruling of the district court was correct, and the judgment is affirmed.

_Wesley Castle_
Associate Justice

We concur:

_Harrison_
Chief Justice

_Frank I. Haswell_

_Gene B. Daly_

_John Conway Harrison_
Associate Justices

- 7 -