FERGUS MOTOR CO., APPELLANT, *v.* SORENSON, CONSTABLE, RESPONDENT.

. (No. 5,556.)

(Submitted October 27, 1924. Decided April 3, 1925.)

[235 Pac. 422.]

*Conditional Sale Contracts—Place of Filing — Statute — Construction.*

Statutes—When Construction Uncalled for.

1. If the language of a statute is plain, simple, direct and unambiguous, it does not call for construction by the courts—it construes itself.

Same—Intent of Legislature to be Pursued—Considerations Entering into Construction.

2. In the construction of a statute the intent of the legislature must be pursued, if possible, and if its language is of doubtful meaning, courts may refer to the history of the times when it was passed and of the Act itself, in order to ascertain the reason as well as the meaning of particular provisions in it.

Same—Meaning—How to be Ascertained.

3. In ascertaining the meaning of a particular statute, courts may resort to the state of the law upon cognate subjects.

Same—Policy of Law Persuasive but not Controlling.

4. While the policy of the law is persuasive in the construction of a statute, it is not controlling.

Same—Later Statutes *in Pari Materia* may Indicate Meaning of Prior Statute.

5. If it can be gathered from a subsequent statute *in pari materia* what meaning the legislature attached to the words of a former statute, its language in the later Act will amount to a legislative declaration of the meaning and will govern the construction of the former.

Same—Injustice Wrought by Practical Application of Statute not Valid Objection.

6. The mere fact that the practical application of a law capable of enforcement fails to meet the needs, or may result in injustice to a particular class, of the public is not an argument against its validity.

Conditional Sale Contracts—Place of Filing—Construction of Statute.

7. *Held*, under the above rules of statutory construction, that a conditional sale contract (subject: an automobile) must, under section

2.   See 25 R. C. L. 1035.
3.   See 25 R. C. L. 1052.
4.   See 25 R. C. L. 1040.
5.   See 25 R. C. L. 1064.
6.   See 25 R. C. L. 1022.

[73 Mont. 122.]

7594, Revised Codes of 1921, be filed in the county where the property was at the time of the execution of the contract, and not in an adjoining county to which it was immediately removed, the home of the conditional vendee where it was kept and used. (Mr. Justice Holloway dissenting.)

Sales, 35 **Cyc.**, p. 688, n. 58 New.
Statutes, 36 **Cyc.**, p. 1106, n. 29; p. 1110, n. 54; p. 1115, n. 97; p. 1137, n. 41; p. 1138, n. 47; p. 1146, n. 18; p. 1147, n. 23.

*Appeal from District Court, Custer County; S. D. McKinnon, Judge.*

Action by the Fergus Motor Company against R. J. Sorenson, as Constable in and for Miles City Township, Custer County. Judgment for defendant and plaintiff appeals. Affirmed.

Cause submitted on briefs of Counsel.

*Messrs. Walker & Nelstead,* for Appellant.

Citing: *Bradley, Clark & Co.* v. *Benson,* 93 Minn. 91, 100 N. W. 670; *National Cash Register Co.* v. *Zangs,* 127 Iowa, 710, 104 N. W. 360; *Becker* v. *La Core,* 211 Mich. 684, 179 N. W. 344; *Kammeier* v. *Chauvet,* 186 Iowa, 958, 171 N. W. 165; *John Deere Plow Co.* v. *Edgar Farmers Store Co.,* 154 Wis. 490, 143 N. W. 194; *Essley Mach. Co.* v. *First Trust Co.,* 160 Wis. 300, 151 N. W. 814.

*Mr. P. F. Leonard,* for Respondent.

Citing: Jones on Chattel Mortgages, 5th ed., 251; *First Nat. Bank* v. *Weed,* 89 Mich. 357, 373, 50 N. W. 864, 869; *Hales* v. *Zander,* 24 Okl. 246, 138 Am. St. Rep. 879, 103 Pac. 669; *Yund* v. *First Nat. Bank,* 14 Wyo. 81, 82 Pac. 6; *Greenville Nat. Bank* v. *Evans-Snyder-Buel Co.,* 9 Okl. 353, 60 Pac. 249; *Stirk* v. *Hamilton,* 83 Me. 524, 22 Atl. 391, 395; 35 Cyc. 688.

HONORABLE LYMAN H. BENNETT, District Judge, sitting in place of MR. JUSTICE GALEN, absent on account of illness, delivered the opinion of the court.

This is an appeal from a judgment entered on an agreed statement of facts, by the district court of Custer county. The judgment having been in favor of the defendant, the plaintiff appealed.

As many of the facts as are pertinent to our inquiry were concisely stated by the judge who tried the cause in the court below as follows: "Briefly, * * * the facts disclose that on the sixteenth day of May, 1923, at Lewistown, Montana, the plaintiff sold and delivered to one W. P. Storm one Ford touring car complete with equipment, motor No. 7499241, for $569.76, at which time a portion of the purchase price was paid and the balance was represented in the form of a conditional contract of sale which was executed and delivered by the said W. P. Storm at Lewistown, Montana, at the time of the purchase of the car. * * * The contract was not filed in Fergus county, where the contract was executed and delivered, and where the property was situated at the time of the execution of the contract, but was filed in Garfield county, Montana, on the twenty-second day of May, 1923. It appears that after the delivery of the car to the purchaser, W. P. Storm, the next day the car was taken from Fergus county and driven into Garfield county, where the said Storm resided at the time of the purchase of the car, and where he now resides. The car was situated in Garfield county, Montana, from the nineteenth day of May, 1923, until June 8, 1923, at which time the car was driven to Miles City in the county of Custer, Montana. On June 9, 1923, the car was seized by the defendant as constable of Miles City township under and by virtue of a writ of attachment issued out of the justice court of Miles City township. * * * It is also agreed that the plaintiffs in the actions [in the justice court] against the said W. P. Storm

had no knowledge of the conditional sale contract in question, or that the same was filed in Garfield county, Montana, except what constructive knowledge, if any, the mere filing of the same in Garfield county might give to the said parties.''

In addition to the foregoing, it is well to note that the contract contains the following: ''The express condition of this contract is such that I am to use **said** property in Fergus and adjoining county, Montana, and not to remove said property to any other county without consent in writing of Fergus Motor Company.'' It is clear that when the contract was made the *situs* of the property was in Fergus county.

The trial judge stated the question which was involved as follows: ''The question for determination is whether or not the conditional sale contract was filed in the proper county.'' We think the lower court fully apprehended the problem which confronted it.

The statute which deals with the filing of conditional sales contracts is as follows: ''All contracts, notes, and instruments for the transfer or sale of personal property, where the title is stipulated to remain in the vendor until the payment of the purchase price, or some part thereof, shall be in writing, and the original or true copy thereof, certified by the county clerk and recorder, shall be filed with the county clerk and the recorder of the county wherein the property is situated; otherwise, any such contract, note, or instrument is void as to *bona fide* purchasers, mortgagees, or attaching creditors of such property prior to such filing.'' (Sec. 7594, Rev. Codes 1921.)

Appellant seeks to have this court construe that statute as not meaning that the contract must be filed in the county where the property was situated at the time of the execution of the contract, without definitely stating what construction is contended for. It variously states what it seeks to have the court hold. The purchaser having been a resident of Garfield county at the time the contract was made, it is suggested that that element should be taken into consideration. Statutes are re-

ferred to which fix the place of filing as the county of the vendee's residence. Apparently it would also be satisfactory to appellant if we would conclude that the county where the property is at the time of filing is the proper county within which to file the contract.

We think that the conclusion of the supreme court of Wyoming, as stated in the opinion in the case of *Studebaker Bros. Co.* v. *Mau,* 14 Wyo. 68, 82 Pac. 2, where the Utah statute governing the filing of such contracts, which read "filed in the office of the county clerk of the county wherein the property is," was under consideration, is very persuasive as to the meaning of our own statute. That court, referring to the quoted language, said: "This can only mean where the property is at the time of the execution of the contract."

It would seem that a reading of our own statute would [1] naturally lead us to such a conclusion. It might, therefore, be said that this case falls within the oft-repeated rule: "If the language is plain, simple, direct and unambiguous, it does not call for construction by the courts. It construes itself." (*Scheffer* v. *Chicago, M. & St. P. Ry. Co.,* 53 Mont. 302, 163 Pac. 565.) However, so many peculiar situations can be found as a result of any construction of this statute, that we will not content ourselves to rest with this statement.

Wherever it is possible for a court to construe a statute, the [2] rule is that the intent of the legislature is to be pursued, if possible. (See sec. 10520, Rev. Codes 1921.) In order to arrive at the intent of the legislature, there are many rules which have been laid down as helpful. For instance, it has been said that the policy of a law is persuasive as to its meaning. (*State ex rel. McGowan* v. *Sedgwick,* 46 Mont. 187, 127 Pac. 94.) Arguing from this, appellant contends that the statute, which, after amendment, now appears as section 7594, *supra,* was originally passed in 1899 (see Laws 1899, p. 124) for the purpose of changing the rule theretofore in force as to conditional sale contracts, which declared that such contracts

were valid as against the world without filing. Proceeding from this premise, appellant contends that the policy of the law was to require notice for the protection of purchasers, encumbrancers and attaching creditors, and that the logical place for failing to give such notice would be the county of the vendee's residence. All this may be true, but it is not conclusive as to the intention of the legislature.

It is also permissible, if not actually necessary, whenever the language of a statute is of doubtful meaning, for the court "to recur to the history of the times when it was passed and of the Act itself, in order to ascertain the reason as well as the meaning of particular provisions in it." (25 R. C. L., p. 1035; and see *Sullivan* v. *City of Butte,* 65 Mont. 495, 211 Pac. 301.)

It is a matter of common knowledge that in 1899 the use of the automobile was very limited, at least in Montana. Certainly, when any given piece of legislation is under consideration, the legislature does not resort to speculation. The operation of the law upon the sets of facts which are known to the individual legislators at the time would undoubtedly control in determining the feasibility of the law which has been introduced. True, we do not take the view that any given legislature will disregard apparent or probable growths of industry which take place from time to time, and only legislate for the immediate present. Whenever possible, a construction will be placed upon all enactments which will make them operative for the length of time they may be in force. This is the spirit of our administrative system. But, regardless of that point of view, in order to properly understand any utterance, it is always advisable to understand the conditions which surround the subject of the utterance.

As has been intimated, in 1899 the use of the conditional sale contract in consummating sales of automobiles and easily movable chattels of that character had not become general enough to have entered into the consideration of the legislature. On the other hand, if any inquiry had been made, they

would have learned that this form of contract was quite fre-
quently used in connection with sales of hotel furnishings, bars,
saloon fixtures, buggies, wagons, farm implements and similar
property which was purchased for use from persons who were
selling out their businesses or leases, or from local dealers.  The
large implement manufacturers were not then operating ex-
tensively in the sale of machinery direct to farmers; nor had
the musical instrument house commenced to broaden its field
of activity.  The instances, where the statute affecting the
rights of the seller who reserved the title until payment was
made, included very few concerning which the interested pub-
lic would be compelled to go beyond the office of the county
clerk of the county within which the vendor resided in order to
find what claims there were against the particular chattel they
were interested in.  And if they inquired, in all probability the
legislators of 1899 found that the vendors who were using such
contracts declined to enter into any such arrangement where
it was contemplated that the property was to be moved from
the comparatively immediate vicinity where the vendor resided
and the contract was entered into.

We also find that courts resort to the state of the law upon
[3]  cognate subjects in their effort to ascertain the meaning
of a particular statute.  (See 25 R. C. L. 1052.)  This point
was probably in the mind of counsel for appellant who argue
that it would have been very easy for the legislature to have
provided ''that the contract shall be filed in the same manner
as chattel mortgages are required to be filed.''  It seems to us
that because of their general similarity, if the legislature had
desired information as to how such matters were handled,
reference would have been made to the chattel mortgage law;
and had this been done, it would have appeared that from 1887
down to the time the subject was being considered, chattel
mortgages were required to be filed in ''the county where the
mortgagor resides or in case he is not a resident'' of Montana
''in the county where the goods, chattels or personal property

may be at the time of the execution of the mortgage." (See sec. 1540, Comp. Stats. 1887.) This provision appears substantially in the Codes of 1895 (sec. 3864, Civ. Code), the only change made being in the use of the language "is situated" in place of "may be," in the provision as to nonresident mortgagors. In this connection it should be noted that the provision relative to filing, where the mortgagor was a resident, was to all intents and purposes what appellant contends the rule now is as to conditional sale notes, and that the provision as to filing where the mortgagor was a nonresident was exactly what the trial court held was the rule controlling this case. It might be borne in mind that in 1887, and even in 1895, the banking business was very generally centered in the larger cities and towns of the state. The stock-grower, who was at those times in all probability the largest borrower upon chattel security, very generally was compelled to go long distances from his home, and the place where his livestock ranged, to his bank. It was quite natural, therefore, that at that time, in order to protect the lender and at the same time to convenience the borrower, the filing provision should be the county of the mortgagor's residence, in the event he was a resident of Montana, and, in the event he was a nonresident, in the county where the property was at the time of the execution of the mortgage.

Such, in general, then, is the history of the times and the subject of both conditional sale contracts and chattel mortgages, as well as the history of the legislation. What do we gather therefrom which aids us in arriving at the meaning of the statute in question?

It seems to us quite apparent that the legislature, after contemplating the entire situation which was then within their range of vision, deliberately chose the rule which they had at hand in the chattel mortgage law: That the contract should be filed in the county where the property "is situated" at the

time of the execution of the contract, as being the rule which would be proper in the large majority of instances.

While it is true that the policy of the law is persuasive, it [4] is not controlling. (See *State ex rel. McGowan* v. *Sedgwick, supra.*) We cannot find anything to indicate that the legislature intended to do anything more than require such a filing as would be reasonable under the circumstances of the majority of cases. If that was their intention, certainly they chose the reasonable method, at least for their times.

If any significance is to be attached to the language used in the statute we are asked to construe, as compared with the chattel mortgage statute then in existence, it would be that they deliberately chose to use the situation of the property at the time of the execution of the contract, as opposed to the residence rule.

And to follow these statutes down to the time when this controversy arose, we find that the conditional sale contract rule has to all intents and purposes remained the same from the time of its enactment to the present as to the filing provisions; while in 1913, for some reason the legislature apparently, from a reading of the entire Act, at the behest of chattel mortgagees by enacting Chapter 86 of the Session Laws of the Thirteenth Legislative Assembly (pages 378 *et seq.*), changed the rule as to filing so as to provide only for filing in the county "where the property was situated at the time of the execution of the mortgage." It may be that this change from the rule, which was in effect in 1899 as to chattel mortgages, is not conclusive upon the question we are considering; but using the converse of the proposition we have just been asserting, it might be said that the legislature had found that with the growth of the country banking system and the increased borrowing upon chattel security, the necessity for the old rule for the convenience of borrowers had disappeared, and the reason for the rule which obtained as to conditional sales had come

to the front.   In other words, by 1913 the loaning upon chattel security had assumed such proportions in the banking system that the mortgagees deemed it to be to their interest that their mortgages should be filed in the county where the property was situated at the time of the execution of the mortgage. And to further protect them, and as a part of the same Act (Chap. 86, Laws 1913, *supra,* sec. 17), the legislature made it a misdemeanor to remove mortgaged property from the county where it was when the mortgage was executed.   This clearly evidences the recognition by the legislature of the fact that mortgagees then deemed it necessary to keep their security within the vicinity of their operations, so that they might at all times be able to observe it.

This is exactly what, by making the filing provision it did in 1899 as to conditional sale contracts, the legislature must have had in mind as to that character of transaction.   In a peculiar sense—since in many instances it had been held that the taking back of the property sold with a reservation of title in the vendor resulted in exonerating the vendee from all further payments—it would always be desirable for the vendor to see just how the property is being used and cared for, and as a consequence he would ordinarily decline to permit the removal of the property from a point where he could watch it. And with this in mind the filing provision must have been adopted as being the best suited to meet existing conditions.

But we are not left to the language of section 7594 alone to ascertain its meaning.   Apparently at some time prior to 1923, conditional sale vendors discovered that section 17 of Chapter 86, Laws of 1913, *supra,* did not cover removal of goods sold under such agreements, for the legislature in 1923 amended that section so as to include within its penalties the removal of property sold with reservation of title in the vendor "from the county where it was situated at the time of the execution of the contract."   (See Chap. 23, Laws 1923.)

It has been stated as a rule of construction: "If it can be
[5] gathered from a subsequent statute *in pari materia* what
meaning the legislature attached to the words of a former
statute, they will amount to a legislative declaration of its
meaning, and will govern the construction of the first statute."
(25 R. C. L. 1064.)

It cannot be doubted that section 7594, *supra,* and 8291, as
amended by Chapter 23, Laws of 1923, are *in pari materia.*
Both sections affect the rights of vendors under conditional sale
contracts; section 7594 specifying the conditions under which
any rights shall obtain as against all except vendees, and sec-
tion 8291 being for the protection of the right of the vendor
as against the vendee.

We have, then, this situation as a result of the passage of
Chapter 23, Laws of 1923: Section 8291, Revised Codes of 1921,
which, as amended by this Chapter, was originally passed as
a portion of the revision of the chattel mortgage law; at the
time of its original passage section 17 (now sec. 8291), Rev.
Codes 1921) defined the crime as being the removal of prop-
erty covered by chattel mortgage "from the county where said
property was situated at the time of the execution of the mort-
gage," or, in other words, from the county within which by
the terms of the same Act the mortgage was required to be
filed; section 8291 was then (in 1923) amended so as to in-
clude within its penalties the removal of property sold under
conditional sale contract, and the language used in defining
the new misdemeanor was the same as that used in defining the
crime relative to mortgaged chattels. If the county of filing
was the county from which the mortgaged property could not
be removed without criminal liability, certainly the same rule
should control as to property sold with title reserved in the
vendor. It is apparent, therefore, that the legislature in 1923
construed section 7594 as providing that the conditional sale
contract should be filed in the county wherein the property is

situated at the time of the execution of the contract. No change in result can be seen by the use in section 8291 of the language "was situated at the time," *etc.*, in place of the phrase "is situated," as used in section 7594. The foregoing demonstrates that from the enactment of the original statute to and including Chapter 23, Laws of 1923, the legislative intention respecting conditional sale contracts has been consistent. We think that, if no other reason existed, this would compel us to conclude that the lower court was correct in its ruling.

Relative to the proposition asserted by appellant that in **[6]** instances the operation of the law as we understand it will result in injustice, we point out that a vendee, who is contemplating entering into such a contract, can refuse to do so unless he is protected by consent in writing to remove from the county, which is permissible by the terms of section 8291, *supra,* and the vendor can likewise refuse to give such permission if he chooses. As to the public, in those instances where it might be affected, we are concluded by the rule that even though the practical application of a law which is capable of enforcement fails to meet the needs of a particular class, it is not an argument against its validity. (See *State ex rel. Board of County Commrs.* v. *District Court,* 62 Mont. 275, 204 Pac. 600.) The legislature having seen fit to legislate in the manner it did, we are not permitted to construe its Act by omission or insertion, and thus to substitute our judgment as to proper legislation, even though we might in instances prefer it otherwise. We are bound by the intention of the legislature in so far as we can ascertain it. "With questions of legislative policy, courts are not concerned. The duty imposed upon them is to construe the laws as they find them." (*State ex rel. Thelen* v. *District Court,* 51 Mont. 337, 152 Pac. 475.)

The lower court properly held that the place for filing of **[7]** conditional sale contracts is the county where the property is at the time of the execution of the contract.

The opinion heretofore, promulgated is withdrawn and the judgment is affirmed.

-*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES STARK and MATTHEWS concur.

MR. JUSTICE HOLLOWAY, dissenting:

The contract before us provides that title to the automobile shall remain in the Fergus Motor Company until the purchase price is paid in full. Such a contract does not evidence a sale, but is merely an executory agreement to sell. (Sec. 7584, Rev. Codes; *Malin-Yates Co.* v. *Justice Court*, 51 Mont. 133, 149 Pac. 709.) It is, however, the character of agreement referred to in section 7594 and is designated generally a conditional sale contract.

The automobile was present in Fergus county on the day the contract was signed and delivered, but it was removed immediately to Garfield county, the home of Storm, the conditional vendee, and there it was kept and used.

The contract was filed in Garfield county before the rights of any third party intervened, and the only question for determination is: Was it filed in the proper county? Section 7594, Revised Codes, provides that such a contract shall be filed in the county "wherein the property is situated," otherwise it shall be void as to *bona fide* purchasers, mortgagees or attaching creditors of such property prior to such filing.

It must be assumed that in enacting the statute the legislature had a purpose in view, and if that purpose can be discovered, a key to the proper interpretation of the Act is provided.

Prior to the enactment of section 7594, a conditional sale contract was not required to be filed, and although not filed and its existence not known to anyone but the vendor and vendee, it protected the interest of the vendor against everyone

who dealt with the property. Neither a *bona fide* purchaser from the vendee in possession, a subsequent mortgagee, nor an attaching creditor of the vendee could obtain any title to or interest in the property covered by the contract, as against the interest of the vendor. (*Heinbockle* v. *Zugbaum,* 5 Mont. 344, 51 Am. Rep. 59, 5 Pac. 897; *Silver Bow M. & M. Co.* v. *Lowry,* 6 Mont. 288, 12 Pac. 652; *Miles* v. *Edsall,* 7 Mont. 185, 14 Pac. 701; *Goodkind* v. *Gilliam,* 19 Mont. 385, 48 Pac. 548; *Bennett Bros.* v. *Fitchett,* 24 Mont. 457, 62 Pac. 780.) Since the vendor was already protected as fully as he could be protected by law, it is manifest that the statute was not enacted for his benefit. On the other hand, those who dealt with the property in the possession of the vendee did so at their peril. The law did not provide any means by which they could know whether the vendee was or was not the owner of the property which he assumed to own, and it was in view of this state of the law that section 7594 was enacted.

It would seem, then, practically demonstrable that the sole purpose was to provide the means—a public record—of imparting notice to every one entitled to notice, *viz.,* those who dealt with the property, in the character of *bona fide* purchasers, subsequent mortgagees, or attaching creditors. If this were the purpose, then the legislature must have intended that the contract should be filed where the filing would be effective, where it would tend, in some degree, at least, to give the notice it was designed to give.

By the majority opinion the place of filing is determined solely by the place where the property happens to be on the day when the contract is signed and delivered. To illustrate: A., a resident of Lincoln county, and B., a resident of Carter county, meet in Helena. A., who has his automobile with him, contracts to sell it to B., and a conditional sale contract is drawn, signed and delivered. A. returns to his home in Lincoln county, and B. takes the car to his home in Carter county and keeps and uses it there. By the majority opinion that

contract would have to be filed in Lewis and Clark county, although the property affected by it was intended to be kept and was kept 400 miles away. In other words, a prospective purchaser, or mortgagee, or a creditor of the person in possession of personal property who desires to deal with such property, must make inquiry of the county clerk of every one of our fifty-six counties before he can be assured that the property is not subject to a conditional sale contract. Such a construction renders section 7594 ridiculous and ought not to be adopted unless the very terms compel it.

Bearing in mind that the statute declares that the contract must be filed in the county "wherein the property is situated," I submit that the language should be given a meaning which will effectuate the purpose for which the statute was enacted. And that purpose would be carried into effect if the contract is filed in the county where the property is kept—where it has its home. That this is the plain meaning of section 7594 is clear to my mind. The word "situated" negatives the idea of mere transitory presence; on the contrary, it connotes permanency to a degree at least. Webster's International Dictionary defines the term as follows: "Situated: Having a site; situation or location; being in a relative position; permanently fixed, placed, located; as a town is situated or situate on a hill or on the seashore."

And this court has heretofore committed itself to this view. Section 2013, Revised Codes, provides: "The property of every firm and corporation must be assessed in the county where the property is situate." In *Flowerree Cattle Co.* v. *Lewis & Clark County,* 33 Mont. 32, 8 Ann. Cas. 674, 81 Pac. 398, that section was construed to mean that such property must be assessed in the county which is its home, where it is kept. We said: "If the property be real estate, its actual *situs* determines the question of its home. If personal property belonging to a merchant, the county where the merchant's business is conducted determines the home of such property; and likewise,

if the property be range stock, its home is its accustomed range.'' The numerous authorities supporting that conclusion will be found cited in the note to 8 Ann. Cas. 677.

A statute of New Hampshire provided that when a mortgagor of chattels resides out of the state, the mortgage should be filed ''in the town in which the chattel is situate.'' In construing that statute the court said: ''Of course a short stay of movables during their transit through a place is not within its meaning. But in an ordinary sense movables are situate in a place where they are used day after day, where they are stored, housed or stabled when not in actual use and where the business in which they are employed is done. To the ordinary observation of people for whose protection and information the statute was intended, that is their location.'' That language is peculiarly applicable here, for there is not a suggestion in the record that the automobile in question was ever in Fergus county except for the one day upon which the contract was signed and delivered.

In my judgment the authorities cited in the majority opinion do not support the conclusion reached, or even tend to that result. *Studebaker Bros. Co.* v. *Mau,* on rehearing, 14 Wyo. 68, 82 Pac. 2, did not involve a construction of any statute. The one question for determination was whether an unfiled conditional sale contract, valid in Utah where executed, should be given effect in Wyoming. The inquiry was answered in the affirmative, and the language quoted in the majority opinion is *obiter dictum.* Decided cases from other jurisdictions, based upon statutes materially different from ours, are of no avail. Neither is it even persuasive to cite Chapter 23, Laws of 1923. That Chapter does nothing more than declare that a conditional vendee who removes personal property subject to a conditional sale contract, from the county where the contract was executed, without the written consent of the vendor, is guilty of a public offense; but it does not refer in the remotest degree to the question before us now. If the vendor's consent is obtained,

the property may be removed. If it is not obtained, the property may not be removed lawfully, in which event the contract must be filed in that particular county, not because it is the county where the contract was executed, but because it is the county where the property is situated; that is, where it must be kept.

If it can be argued that by the enactment of Chapter 23, above, the legislature undertook to say what the legislature meant by the terms employed twenty-four years prior thereto, my answer is: "So far as an Act in terms professes to declare the past or present meaning of an existing statute, it is not legislative and not binding on the courts." (2 Lewis' Sutherland on Statutory Construction, sec. 576.)

A reference to our chattel mortgage statute is equally unavailing. It must be conceded that the legislature could have made the same provision for filing a conditional sale contract as it made for a chattel mortgage; but the fact is, it did not do so, and this court is without authority to amend section 7594 so as to make the two statutes harmonize.

By the majority opinion the words "at the time the contract is executed" are inserted in section 7594, notwithstanding the statute forbids it. Section 10519, Revised Codes, declares: "In the construction of a statute or instrument, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted."