No. 80-266

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

---

JOHN R. MEANS and MARY MEANS,
MONTANA DEPARTMENT OF OF NATURAL
RESOURCES and CONSERVATION, an
agency of the State,

                    Plaintiffs and Appellants,

        vs.

THE MONTANA POWER COMPANY, A
Montana Corporation,

                    Defendant and Respondent.

---

Appeal from:  District Court of the Fourth Judicial District,
              In and for the County of Missoula, Montana
              Honorable John Henson, Judge presiding.

Counsel of Record:

    For Appellants:

        Donald D. MacIntyre, Dept. of Natural Resources, argued,
        Helena, Montana
        Williams Law Firm, Missoula, Montana
        Richard Ranney argued, Missoula, Montana

---

                    Submitted:  January 13, 1981

                    Decided:  MAR 4 - 1981

Filed:  MAR 4 - 1981

_____
                Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This appeal arises from an order appointing respondent's attorney lead counsel and providing for reasonable compensation and an order fixing that compensation entered by the District Court for the Fourth Judicial District, Missoula County, the Honorable John S. Henson presiding.

There occurred on July 16, 1977, a fire in the Pattee Canyon area of Missoula County, Montana. The fire caused extensive damage to both homes and land in the area. The Montana Department of Natural Resources and Conservation (DNRC) fought the blaze and made arrangements for an investigation into the causes of the fire. It was later determined that power lines of the Montana Power Company could have been the cause of the Pattee Canyon fire.

A complaint for damages to their property caused by the fire was filed by John and Mary Means on March 14, 1978. Filing of the complaint had followed extensive discovery by Shelton C. Williams, attorney for Mr. and Mrs. Means.

On December 21, 1978, DNRC filed its own complaint seeking approximately $532,000 for damages to state land and costs for extinguishing the fire.

On March 30, 1979, the Means case and the DNRC case were consolidated by stipulation. Subsequently, other parties who had suffered losses caused by the fire filed additional complaints against the Montana Power Company. Altogether there were thirty-one cases filed in the Fourth Judicial District Court, Missoula County, except for one which Williams filed in the Federal District Court for Montana. There were approximately ten attorneys or firms who ultimately became involved in the litigation for the

various plaintiffs.

The Montana Power Company, by motion on May 23, 1979, sought consolidation of all cases pending in District Court. Shortly afterwards, on July 27, 1979, Williams filed a motion seeking an appointment of lead counsel.

The motion for consolidation for the purpose of determining liability was granted on August 8, 1979. The order provided, however, that the damage aspect of the actions be bifurcated with separate trials being envisioned, if necessary, in this regard.

On October 30, 1979, Williams filed a stipulation whereby counsel for all parties, except DNRC, agreed to his being lead counsel and to his compensation therefor. As a result of the stipulation, Williams represented thirty of thirty-one parties for claims totaling $2,242,875.75. On November 1, 1979, the District Court, without a hearing, ordered the appointment of Williams as lead counsel in all consolidated cases, including the action filed by DNRC. The order also provided that the Williams Law Firm be reasonably compensated for services heretofore or hereafter rendered. The amount of compensation was to be determined by agreement of the parties or by the court after termination of lead counsel's responsibilities.

The matter proceeded toward the scheduled trial date of December 3, 1979, with discovery proceeding and numerous preliminary motions with Williams as lead counsel. Prior to trial settlement negotiations began with DNRC and various home owners settling their claims for $1,215,000 of which $425,000 was for DNRC. A group referred to as the raw landowners failed to reach a settlement and preparation on

their behalf continued for the scheduled trial date.

On December 3, 1979, the presiding judge withdrew from the case, and the trial date was vacated. A new judge and trial date were subsequently set, and the raw landowners proceeded to trial.

On December 28, 1979, Williams, as lead counsel, after failing to reach an agreement with DNRC, moved for a determination of compensation. After a series of hearings the District Court entered an order on March 14, 1980, granting the Williams Law Firm $47,222.22 to be paid by DNRC.

DNRC appeals both the order of November 1, 1979, appointing lead counsel and the order of March 14, 1980, determining compensation.

The following issues have been presented to this Court for review:

1. Did the District Court err in failing to hold an evidentiary hearing prior to entering its findings of fact, conclusions of law and order appointing lead counsel?

2. Did the District Court err in appointing a lead counsel?

3. Did the District Court err in ordering DNRC to pay compensation to lead counsel?

4. Did the District Court abuse its discretion in awarding compensation in the amount of $47,222.22?

As to the first issue on appeal, DNRC would have this Court remand this action to the District Court due to its failure to hold an evidentiary hearing prior to entering the November 1, 1979, order appointing lead counsel. The basis of this contention is that since there is no record to

-4-

review, this Court is unable to determine if there is sufficient evidence to support the findings made. We must disagree.

The order of November 1, 1979, was entered in response to a motion under Rule 42(a), M.R.Civ.P. (consolidation). Rule 52(a), M.R.Civ.P., in pertinent part, provides that, "[f]indings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion . . ." Findings of fact being unnecessary for a ruling on said motions, the District Court is under no obligation to provide an evidentiary hearing.

The District Court in this instance, however, though under no obligation to do so, chose to make findings of fact upon which it based its conclusions of law and order. This Court now being presented with the order for examination, it is incumbent upon this Court to review the findings as well as the applicable law. See Timmerman v. Gabriel (1970), 155 Mont. 294, 470 P.2d 528; section 3-2-204(5), MCA; Upper Missouri G & T Electric Cooperative, Inc. v. McCone Electric Cooperative, Inc. (1971), 157 Mont. 239, 484 P.2d 741. It is not necessary, however, that this action be remanded for an evidentiary hearing.

Here, the findings in dispute are: (1) that the size and complexity of the case demands the appointment of a lead counsel; and (2) that almost all of the discovery and trial preparation has been done by Williams with the implied consent of DNRC. An examination of the submitted District Court file (as to the complexity of the case) and a review of the hearings held in regard to the order setting compensation (as to the work done by Williams with the implied

consent of DNRC) provides a sufficient basis for review.

The second issue on appeal involves a determination of whether or not this action was an appropriate one for a lead counsel to be appointed.

As the cases cited by both DNRC and Williams indicate, the appointment of lead counsel is made in conjunction with a motion and order for consolidation and has been primarily used in federal court proceedings involving multiparty litigation. See In Re Air Crash Disaster at Florida Everglades (5th Cir. 1977), 549 F.2d 1006; Vincent v. Hughes Air West, Inc. (9th Cir. 1977), 557 F.2d 759.

In the present case, thirty-one separate plaintiffs all brought suit against the Montana Power Company claiming damages occasioned by a single disaster. The thirty-one plaintiffs were represented by ten different attorneys. Clearly, this case does not appear as complex as that seen in Vincent (sixty separate actions brought in state and federal courts in Washington, Utah and California) or in Florida Everglades (150 claims in both federal and state courts). However, it cannot be said that the trial court, in exercising its managerial power over this proceeding, clearly abused its discretion as a matter of law in providing for the appointment of a lead counsel.

The purpose of consolidation and appointment of lead counsel is to permit trial convenience and economy in administration by avoiding unnecessary costs or delay. MacAlister v. Guterma (2nd Cir. 1958), 263 F.2d 65. Absent a lead counsel there was no guarantee presented to the court that all the parties to this proceeding would not become actively involved in the litigation. Consequently, had the

District Court failed to formally order appointment of lead counsel, it could have been faced with the possibility of ten different attorneys pursuing ten different theories of attack. It is obvious that such an arrangement would foster undue delay, cost and inconvenience.

Furthermore, and most importantly, in light of DNRC's past conduct, this Court seriously questions the propriety of allowing DNRC to avoid the application of the lead counsel order. After the order was entered at no time did DNRC move for a reconsideration, nor did it seek an appeal or writ to have the order reviewed by this Court prior to the scheduled trial date. Moreover, during the initial settlement negotiations, DNRC failed to accept a proposal made by the Montana Power Company to segregate the claims of DNRC, which would have allowed the Department to proceed on its own and to avoid further application of the lead counsel order. Even prior to the lead counsel order, during extensive discovery engaged in by the parties, DNRC allowed Williams to act as lead counsel, having him take a great bulk of the deposition needed for trial, while choosing not to attend and merely paying its own pro rata share of the costs. DNRC also allowed Williams to do the majority of the work in preparing interrogatories.

DNRC contends it was bound by the lead counsel order and unable to appeal until the March 14, 1980, order was entered allowing Williams compensation. A final determination of the parties' rights, argues DNRC, only occurred when the court ordered it to pay compensation and the matter was deemed concluded. DNRC bases this argument on language in the lead counsel order that the court was to retain contin-

uing jurisdiction over the matter to review the acts of lead counsel to enforce and interpret the court as entered."

We disagree with DNRC's position in failing to see why the language noted should make the order appointing lead counsel any less final than the March 14, 1980, order setting compensation. The November 1, 1979, order specifically appointed Williams lead counsel, subject to reasonable compensation. The only reason the court was retaining a "continuing jurisdiction over the matter" was to assure that Williams acted in the best interest of the plaintiffs and to set the already ordered reasonable compensation. If DNRC disputed this appointment and the terms thereunder, it should have made its feelings known.

It is apparent that DNRC was more than willing to allow Williams to act as lead counsel; to accept his appointment as such; and to accept the benefits of the $425,000 settlement acquired under the order. DNRC having already consented to an application of the lead counsel order, it should not be allowed to avoid the same on appeal to this Court.

As to the order determining compensation for Williams as lead counsel, DNRC first argues that due to the absence of any contractual agreement between the parties or any statutory authority, attorney fees are not recoverable. See Winder v. Jonal Corp. (1976), 169 Mont. 247, 545 P.2d 1094. Williams acknowledges this general rule but contends that in situations where attorney fees are paid from a "common fund," it is accepted that these fees can be awarded even in absence of statute or an express agreement.

The "common fund" concept provides that when a party

through active litigation creates, reserves or increases a fund, others sharing in the fund must bear a portion of the litigation costs including reasonable attorney fees. The doctrine is employed to spread the cost of litigation among all beneficiaries so that the active beneficiary is not forced to bear the burden alone and the "stranger" (i.e., passive) beneficiaries do not receive their benefits at no cost to themselves. See Vincent, supra, 557 F.2d at 769.

The doctrine is well recognized and has been quoted in several Montana cases. See In Re Baxter's Estate (1933), 94 Mont. 257, 22 P.2d 182; Hardware Mutual Casualty Co. v. Butler (1944), 116 Mont. 73, 148 P.2d 563; Tuttle v. Morrison-Knudsen Co., Inc. (1978), 177 Mont. 166, 580 P.2d 1379. See also City of Klawock v. Gustafson (9th Cir. 1978), 585 F.2d 428. The basis of the doctrine being rooted in the equitable concepts of quasi-contract, restitution and recapture of unjust enrichment, the common fund theory of awarding compensation to a lead counsel must be allowed as an expansion of the general rule provided in Winder.

DNRC argues that even if the common fund concept is recognized in Montana it should not be applied in this instance. DNRC bases this contention on an active litigant versus passive litigant distinction.

It is stated that only inactive or passive beneficiaries should be forced to bear the costs of litigation under the common fund doctrine. An inactive member in this regard has been defined as a beneficiary who merely fails to retain counsel or one who retains legal counsel but said counsel fails, in any degree, to participate in any labors leading to the creation of the fund. See In Re Estate of

-9-

Korthe (1970), 88 Cal.Rptr. 465, 9 Cal.App.3d 572; see also plumbing fixture anti-trust cases: Philadelphia Housing Authority v. American Radiator and Standard Sanitary Corp. (E.D. Pa. 1971), 322 F.Supp. 834, modified sub nom., Ace Heating and Plumbing Co. v. Crane Co. (3rd Cir. 1971), 453 F.2d 30; Philadelphia Housing Authority v. American Radiator and Standard Sanitary Corp. (E.D. Pa. 1970), 323 F.Supp. 364; Note, Reimbursement for Attorneys' Fees from Benefici-aries of Representative Litigation, 58 Minn. L. R. at 947-948 (1974).

Nevertheless, the courts have recognized an exception to this general rule. See Vincent, 557 F.2d at 772. The exception provides that so long as contributions of active counsel were unequal (i.e., greater) when compared with those of a less active counsel, compensation can still be ordered paid under the common fund doctrine by the less active party. See also Doherty v. Bress (D.C. Cir. 1958), 262 F.2d 20, cert. denied 359 U.S. 934, 79 S.Ct. 649, 3 L.Ed.2d 636. The purpose of this exception is similar to that of the common fund doctrine itself--to avoid unjust enrichment.

Here the record indicates that DNRC accrued 1,680 hours in legal services. This total included the services of DNRC's legal staff, legal interns and nonlegal personnel. Williams Law Firm's time records reflected 3,909.25 hours on the case to the time of settlement. This total also included work by attorneys, interns and secretaries. Williams also testified that his time records understated the actual time spent on the case by 10 to 20 percent. The disparity in efforts between lead counsel and DNRC being

evident, the District Court was proper in ordering compensation.

DNRC's final arguments concerning its efforts to avoid paying lead counsel are twofold. First, DNRC maintains that as a state agency, it should be treated differently with respect to an obligation to compensate lead counsel in that it can only retain counsel by an exclusive procedure set forth in Executive Order No. 15-78. Second, DNRC contends that DR2-107, "Division of Fees Among Lawyers," of the Canons of Professional Ethics, will be violated should this Court grant Williams the ordered compensation.

In rejecting DNRC's contention that it should be treated different from other beneficiaries to a common fund, we need only note that payment for litigation costs by the various beneficiaries is founded upon principles of equity. In enforcing this doctrine, equity demands that all parties receiving a benefit from the common fund be included in its application.

Furthermore, there is no basis for applying DR2-107 of the Canons of Professional Ethics as submitted by DNRC. This rule is concerned solely with the question of two lawyers dividing fees. It has no application to a situation where there is a court-appointed lead counsel to whom others may be required to pay compensation, all under the strict supervision and authority of the court.

In regard to the final issue on appeal, in determining a reasonable fee in a given case, this Court has established the following guidelines:

> ". . . The circumstances to be considered in determining compensation to be recovered are

the amount and the character of the services rendered, the labor, time and trouble involved, the character and importance of the litigation in which services are rendered, the amount of money or the value of property to be affected, the professional skill and experience called for, the character and standing in their profession of the attorneys . . . The result secured by the services of the attorneys may be considered as an important element in determining their value." First Security Bank v. Tholkes (1976), 169 Mont. 422, 429-430, 547 P.2d 1328, 1332; accord, Carkeek v. Ayer (1980), ____ Mont. ____, 613 P.2d 1013, 1015, 37 St.Rep. 1274, 1275-1276.

The fee awarded in this instance was 11.1 percent of DNRC's recovery under the lead counsel order. This amount was granted only after extensive testimony relating to the above factors. It is true that this award exceeds the compensation paid by the other plaintiffs represented by lead counsel; but, it should be noted that these other parties agreed to a set amount without having to invoke the aid of the trial court. We can find no abuse of discretion.

The judgment of the District Court appointing Williams as lead counsel and granting compensation is affirmed.

_____
                Justice

We concur:

_____
       Chief Justice              ,

_____


_____
    Justices

Mr. Justice Daniel J. Shea dissents and will file a written dissent later.