*31 JUSTICE COTTER
delivered the Opinion of the Court.
¶1 Martin and Carolyn Kilmer (Kilmers) appeal from an order issued by the Seventh Judicial District Court, Richland County, granting Medcenter One, Inc.’s (Medcenter) motion for partial summary judgment. The District Court’s order precluded Kilmers from recovering Medcenter’s alleged pro rata share of attorney fees from a settlement fund subject to Medcenter’s hen. We reverse and remand.
¶2 We restate the sole issue on appeal as follows:
Does our opinion in Sisters of Charity v. Nichols preclude application of the common fund doctrine to the case at bar?
FACTUAL AND PROCEDURAL BACKGROUND
¶3 On April 1, 1999, Martin Kilmer was a passenger in a vehicle driven by Keltz Hall on a North Dakota highway. Hall lost control of the vehicle and Martin suffered severe injuries as a result of the single vehicle accident. Martin received medical attention from Medcenter, a North Dakota hospital. Despite Medcenter’s efforts, Martin’s injuries rendered him a quadriplegic. Medcenter perfected a hospital lien in North Dakota and Montana for the value of its services, approximately $309,000.
¶4 Hall possessed no vehicle, homeowners’, or farm and ranch insurance coverage. However, Hall’s father Wallace, co-owner of the vehicle Hall was operating, did have a motor vehicle insurance policy through Mountain West Farm Bureau (Mountain West). This policy had a maximum limit of $500,000 with an additional $30,000 in no-fault coverage. The policy contained a step-down provision which limited Mountain West’s liability to $25,000 per person for passengers other than the named insured or a relative of the named insured.
¶5 Initially, Mountain West claimed Kilmers were entitled to only $25,000 under Wallace’s policy pursuant to the step-down provision. However, after negotiating with Kilmers’ attorney, Mountain West agreed to proffer the policy limits of $530,000. On October 29, 1999, Mountain West filed a complaint for interpleader naming the above captioned parties and subsequently tendered $530,000 to the District Court. Medcenter cross-claimed against Kilmers seeking satisfaction of its lien. Kilmers cross-claimed against Medcenter seeking reduction in Medcenter’s recovery for a pro rata portion of their attorney fees incurred in negotiating Mountain West’s $530,000 tender. Upon stipulation of the parties, the District Court subsequently dismissed Defendants Wallace Hall, Glenna Hall, and Keltz Hall from the action.
¶6 On December 29, 1999, Medcenter moved for partial summary *32 judgment, arguing it was not liable for a pro rata portion of Kilmers’ attorney fees. Following a June 13, 2000, hearing, the District Court concluded that the facts existing herein are indistinguishable from those in Sisters of Charity v. Nichols (1971), 157 Mont. 106, 483 P.2d 279. Concluding that Nichols is still controlling law in Montana, the District Court granted Medcenter’s motion and entered judgment for Medcenter. Kilmers appeal the District Court’s summary judgment ruling.
STANDARD OF REVIEW
¶7 Our standard of review in appeals from summary judgment rulings is de novo. Motarie v. Northern Mont. Joint Refuse Disposal Dist. (1995), 274 Mont. 239, 242, 907 P.2d 154, 156. We review a district court’s summary judgment to determine whether it was correctly decided pursuant to Rule 56, M.R.Civ.P., which provides that summary judgment is appropriate only when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. See Motarie, 274 Mont. at 242, 907 P.2d at 156.
¶8 Here, the parties do not present disputed factual issues on appeal. Thus, our role is to determine, as did the District Court, whether Medcenter is entitled to judgment as a matter of law. In essence, we need only determine whether the District Court’s conclusion regarding the applicability of this Court’s case law is correct.
DISCUSSION
¶9 Does our opinion in Sisters of Charity v. Nichols preclude application of the common fund doctrine to the case at bar?
¶10 Section 71-3-1114(l)(b), MCA (1999), provides that a hospital has a lien for the value of services rendered on:
(i) any claim or cause of action that the injured person or the injured person’s estate or successors may have for injury, disease, or death;
(ii) any judgment that the injured person or the estate or successors may obtain for injury, disease, or death; and
(iii) all money paid in satisfaction of the judgment or in settlement of the claim or cause of action.
Both parties agree that pursuant to § 71-3-1114(1)(b), MCA (1999), Medcenter has a valid lien for the medical services rendered to Martin Kilmer immediately following his accident. However, § 71-3-1114, MCA (1999), is silent on the issue of attorney fee apportionment.
¶11 In the 2001 session, the Montana Legislature amended § 71-3- *33 1114, MCA, to address a hospital’s pro rata liability for an injured person’s attorney fees. Section 71-3-1114(3), MCA, now states:
A ... hospital ... claiming a lien under this part is not liable for attorney fees and costs incurred by the injured person, the injured person’s estate or successors, or a beneficiary in connection with obtaining payments or benefits subject to a ben under this part.
The statute contains no express retroactive appbcation provision.
¶12 Pursuant to § 1-2-201, MCA, every statute adopted after January 1, 1981, takes effect on the first day of October following its passage and approval unless the enacting legislation prescribes otherwise. As § 71-3-1114, MCA (2001), contains no express effective date prescription, both parties agree it has an October 1, 2001, effective date. Further, no Montana law is retroactive unless the statute expressly so declares. Section 1-2-109, MCA. Since § 71-3-1114, MCA (2001), contains no retroactive provision and all of the relevant events pertaining to Kilmers’ claim occurred prior to October 1, 2001, § 71-3-1114, MCA (1999), applies to the case at bar. However, as previously stated, § 71-3-1114, MCA (1999), contains no attorney fee apportionment provision.
¶13 Montana follows the general American rule that a party in a civil action is not entitled to attorney fees absent a specific contractual or statutory provision. School Trust v. State ex rel. Bd. of Com’rs, 1999 MT 263, ¶ 62, 296 Mont. 402, ¶ 62, 989 P.2d 800, ¶ 62. However, we have recognized equitable exceptions to the American rule. See, e.g., Foy v. Anderson (1978), 176 Mont. 507, 511, 580 P.2d 114, 117, and Holmstrom Land Co. v. Hunter (1979), 182 Mont. 43, 48-49, 595 P.2d 360, 363 (affirming award of attorney fees on equitable grounds despite absence of specific contractual or statutory grant); Goodover v. Lindey’s, Inc. (1992), 255 Mont. 430, 447, 843 P.2d 765, 775 (recognizing hmited equitable exception to general rule when party is “forced into a frivolous lawsuit”).
¶14 One of the recognized equitable exceptions to the American rule is the common fund doctrine. Generally, this doctrine authorizes the spread of fees among those individuals benefitting from the btigation which created the common fond. See Morris B. Chapman & Assocs., Ltd. v. Kitzman (Ill. 2000), 739 N.E.2d 1263, 1271. In Means v. Montana Power Co. (1981), 191 Mont. 395, 403, 625 P.2d 32, 37, this Court adopted the common fund doctrine, concluding:
The “common fund” concept provides that when a party through active btigation creates, reserves or increases a fund, others sharing in the fund must bear a portion of the btigation costs *34 including reasonable attorney fees. The doctrine is employed to spread the cost of litigation among all beneficiaries so that the active beneficiary is not forced to bear the burden alone and the “stranger” (i.e., passive) beneficiaries do not receive their benefits at no cost to themselves.
The doctrine entitles the party who created the fund to reimbursement of his or her reasonable attorney fees from the common fund. Murer v. State Comp. Mut. Ins. Fund (1997), 283 Mont. 210, 223, 942 P.2d 69, 76. Our decisions in Means and Murer outline the three elements necessary to establish a common fund.
¶15 First, one party must create, reserve, or increase a common fund. This party is typically referred to as the active beneficiary. The fund must be an existing, identifiable monetary fund or benefit to which all of the beneficiaries maintain an interest.
¶ 16 Second, the active beneficiary must incur legal fees in establishing the common fund. Medcenter insists the active beneficiary must initiate “active litigation” to satisfy this element. Since Kilmers did not bring suit against Mountain West to establish the fund, Medcenter argues Kilmers failed to satisfy the active litigation requirement.
¶17 Medcenter derived this active litigation language from our decisions in Means and Murer. However, in Murer, the language preceding the “active litigation” reference appears to dispel Medcenter’s argument. We stated:
The United States Supreme Court created the common fund doctrine in Trustees v. Greenough (1881), 105 U.S. 527, 15 Otto 527, 26 L.Ed. 1157, and has subsequently applied that doctrine in numerous other cases (citations omitted). These common fund doctrine cases provide that when a party has an interest in a fund in common with others and incurs legal fees in order to establish, preserve, increase, or collect that fund, then that party is entitled to reimbursement of his or her reasonable attorney fees from the proceeds of the fund itself.
Murer, 283 Mont. at 222, 942 P.2d at 76. The cases cited in Murer merely illustrate the need to incur legal fees in pursuit of the common fund rather than engage in “active litigation.” In Means and Murer, the active litigation was simply the expense-incurring mechanism employed by the parties to establish the common fund.
¶18 Third, and finally, the common fund must benefit ascertainable, non-participating beneficiaries. In Means, we referred to nonparticipating beneficiaries as inactive or passive beneficiaries and defined them as those who fail to retain counsel, or those who retain *35 counsel who fails to participate in the labors creating the common fund. Means, 191 Mont. at 404, 625 P.2d at 37. Further, to the extent there are inequities in contribution of participating counsel, the court may intervene to allocate fees accordingly. See Means, 191 Mont. at 404, 625 P.2d at 37.
¶19 Nevertheless, Medcenter argues, and the District Court agreed, that our decision in Nichols precludes application of the common fund doctrine to the case at bar. In Nichols, the defendant (Nichols) incurred approximately $2000 in medical expenses after being hit by an automobile. Nichols hired an attorney who filed a personal injury claim against the driver and negotiated a settlement for $5000. Meanwhile, the hospital perfected a lien for the medical services it provided to Nichols. Nichols’ attorney attempted to deduct one-third of the hospital’s $2000 hen, claiming the hospital was liable for a pro rata portion of Nichols’ attorney fees incurred in procuring the settlement. Nichols sought to remit the remaining two-thirds to the hospital in full satisfaction of the hospital’s lien. The hospital filed suit seeking, among other things, judgment against Nichols for the full amount of the hospital bill. The district court entered judgment for the hospital.
¶20 On appeal, Nichols proffered two theories in support of her attorney fee apportionment position. First, Nichols claimed that an implied contract existed between the hospital and her attorneys for their services and compensation. This Court dismissed the implied contract argument, stating:
The fact that an incidental benefit was also received by the hospital from her attorneys’ services in the form of settlement proceeds from which its bill could be paid does not, in itself, create an implied contract by the hospital to pay her attorneys for their services.
Nichols, 157 Mont. at 111-12, 483 P.2d at 283. Second, Nichols argued the hospital was obligated to pay a pro rata share of the attorney fees much like a subrogated insurer is obligated to share attorney fees and costs with its insured in recovering against a third party. We rejected this subrogation analogy based on the inherently different positions occupied by a subrogated insurance company and a hospital lien holder. We stated:
The obligation of the subrogated insurer to share in the costs of recovery from a third party wrongdoer arises because the insurer occupies the position of the insured with coextensive rights and liabilities and no creditor-debtor relationship between them. But *36 here, unlike that situation, the hospital’s claim and lien is based upon a debt owed the hospital by its patient in whose shoes it does not stand for any purpose, the debt being owed to it by its patient irrespective of the patient’s rights against a third party wrongdoer. Because the substitution principle does not apply here, no obligation arises on the part of the hospital to share in the costs of recovery against a third party, and the attempted analogy fails.
Nichols, 157 Mont. at 112-13, 483 P.2d at 283. Therefore, we affirmed the district court’s judgment in favor of the hospital.
¶21 Here, Medcenter analogizes Kilmers’ common fund argument to those arguments posited in Nichols. Medcenter insists Nichols is dispositive to the case at bar. However, in Nichols, this Court addressed only those implied contract and subrogation issues advanced by the parties. As neither party raised the common fund issue in Nichols, this Court had no reason to, and did not, analyze the issues in Nichols in the context of the common fund doctrine. Kilmers acknowledge that Nichols would bar an apportionment claim brought on an implied contract or subrogation theory. However, Kilmers insist the common fund doctrine presents entirely different legal issues. We agree. Therefore, we hold that Nichols does not preclude application of the common fund doctrine to the case at bar.
¶22 Finally, at oral argument, Medcenter argued that the legislative hearings held in contemplation of § 71-3-1114, MCA (2001), evince a clear legislative intent to prohibit our application of the common fund doctrine to the medical services arena. Medcenter suggests that we should impute the 2001 legislative intent to § 71-3-1114, MCA (1999). To support this proposition Medcenter cites Fergus Motor Co. v. Sorenson (1925), 73 Mont. 122, 235 P. 422.
¶23 In Fergus, this Court stated:
If it can be gathered from a subsequent statute in pari materia what meaning the Legislature attached to the words of a former statute, they will amount to a legislative declaration of its meaning, and will govern the construction of the first statute.
Fergus, 73 Mont. at 132, 235 P. at 425. Historically, in pari materia statutes were statutes consistent with one another that referred to the same subject matter. See In re Clark’s Estate (1937), 105 Mont. 401, 409, 74 P.2d 401, 405. Statutes in pari materia should be construed together and effect given to both if it is possible to do so. Register Life Ins. Co. v. Kenniston (1935), 99 Mont. 191, 197, 43 P.2d 251, 254. Presumably, Medcenter believes the 2001 and 1999 statutes are *37 consistent with one another. We disagree.
¶24 The two statutes do address the same subject matter and are consistent with one another except for one provision-the attorney fee provision at issue here. The legislative intent embodied in the 2001 statute fails to inform us of the “meaning the Legislature attached to the words of [the] former statute,” because the 1999 statute does not address attorney fee apportionment. The statutes are not consistent with regard to a medical service provider’s liability for an injured party’s attorney fees. Therefore, Medcenter’s in pari materia argument is without merit.
¶25 For the foregoing reasons, we hold that the District Court erred as a matter of law in relying on Nichols to grant Medcenter’s motion for partial summary judgment. As the issue on appeal focused primarily on Nichols’ application to this case, the parties did not present arguments on whether Kilmers can satisfy those elements of the common fund doctrine discussed herein. Therefore, we decline to rule on the doctrine’s application to the case at bar as the dissent suggests we should. Instead, and as requested by Kilmers, we reverse and remand to allow Kilmers to present arguments in the District Court for the application of the common fund doctrine in this case.
CHIEF JUSTICE GRAY, JUSTICES NELSON, REGNIER, TRIEWEILER and LEAPHART concur.