[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1117 
Government Employees Insurance Company ("GEICO") appeals from a judgment requiring it to pay a pro rata share of the attorney fee Jane Capulli incurred in settling her personal-injury claim against Carolyn Zavala. We affirm.
On July 1, 2000, Capulli was injured in a motor-vehicle accident with Zavala. Capulli was a passenger in a vehicle owned and driven by James Griffith, GEICO's insured. Zavala's vehicle was insured by Alfa. Capulli retained an attorney to *Page 1118 
represent her in a personal-injury claim against Zavala; she agreed to pay her attorney a one-third contingency fee. Within 30 days of the accident, Alfa admitted liability and paid a property-damage claim made by Griffith. GEICO paid Capulli's medical expenses of $2,767.18, pursuant to the medical-payments provision of the policy it had issued to Griffith. The record does not contain the insurance policy GEICO issued to Griffith. GEICO states, however, that Capulli is an additional insured under the policy by virtue of her being a passenger in Griffith's vehicle. Capulli did not deny that GEICO had a subrogation interest in her recovery to the extent of the medical payments it made on her behalf.
On September 21, GEICO contacted Alfa regarding payment of its subrogation claim. On September 27, Alfa advised GEICO that Capulli was represented by an attorney and that, upon settlement of Capulli's claim, it would contact GEICO regarding its subrogation interest. On October 12, Alfa agreed to settle Capulli's claim against Zavala for $6,400. That figure included payments for medical expenses, pain, suffering, and mental anguish. Capulli's attorney informed Alfa that he would be responsible for paying GEICO's subrogation claim. Alfa agreed to disburse the settlement proceeds to Capulli's attorney if the attorney would provide Alfa with a hold-harmless letter regarding GEICO's subrogation interest. Alfa paid the settlement proceeds to Capulli's attorney, who then paid GEICO $1,844.79 (two-thirds of its subrogation claim of $2,767.18), and retained $922.39 (one-third of GEICO's subrogation claim) as an attorney fee, pursuant to the "common-fund" doctrine.
Contending that the common-fund doctrine did not apply, GEICO objected to the attorney's withholding one-third of its subrogation interest as his fee. Capulli then filed a declaratory-judgment action seeking a ruling that the sum withheld by the attorney be paid to her under the common-fund doctrine. GEICO answered and counterclaimed, alleging breach of contract/subrogation, money had and received, and intentional interference with business relations. Capulli moved for a summary judgment, and GEICO filed a response in opposition to the motion, along with a cross-motion for a partial summary judgment. The trial court denied GEICO's motion for a partial summary judgment and granted Capulli's motion for a summary judgment. GEICO appeals, arguing that the common-fund doctrine is inapplicable.
The pertinent facts in this case are undisputed. Therefore, we review the circuit court's application of the law to the facts to determine whether Capulli was entitled to a judgment as a matter of law. SeeCarpenter v. Davis, 688 So.2d 256, 258 (Ala. 1997). No presumption of correctness attaches to the decision of a trial court on a summary judgment motion, and our review is de novo. See Gossett v. Twin CountyCable T.V., Inc., 594 So.2d 635 (Ala. 1992).
The general, or "American," rule is that attorney fees may be recovered from a source other than the attorney's client, or the one who contracted to pay the fee, only when "authorized by statute, when provided in a contract, or by special equity, such as in a proceeding where the efforts of an attorney create a fund out of which fees may be paid." Eagerton v.Williams, 433 So.2d 436, 450 (Ala. 1983). There is no statutory authorization for awarding Capulli an attorney fee from GEICO's subrogation interest, and there is no contract between Capulli or her attorney and GEICO that provides for the payment of attorney fees. Therefore, the only basis for an exception to the general rule *Page 1119 
is the "special equity" exception. "The `common fund' [doctrine] is merely a particular instance of the `special equity' exception to the rule that attorney fees may not ordinarily be recovered." Mitchell v.Huntsville Hosp., 598 So.2d 1358, 1361 (Ala. 1992).
The common-fund doctrine in insurance-subrogation cases is based on the equitable notion that, because an insurer is entitled to share, to the extent of its subrogation interest, in any recovery its insured achieves against a tortfeasor, the insurer should bear a proportionate share of the burden of achieving that recovery — including a pro rata share of the insured's attorney fee. See generally Johnny Parker, The CommonFund Doctrine: Coming of Age in the Law of Insurance Subrogation, 31 Ind. L.Rev. 313, 320-25 (1998); Annot., Right of Attorney for Holder ofProperty Insurance to Fee out of Insurer's Share of Recovery fromTortfeasor, 2 A.L.R.3d 1441 (1965).
The United States Supreme Court created the common-fund doctrine over 100 years ago in two decisions that did not involve insurance subrogation, see Trustees v. Greenough, 105 U.S. 527 (1881), and CentralR.R. Banking Co. v. Pettus, 113 U.S. 116 (1885). The landmark decision extending the doctrine to insurance-subrogation cases is UnitedServices Automobile Association v. Hills, 172 Neb. 128, 109 N.W.2d 174
(1961). See John P. Dawson, Lawyers and Involuntary Clients: AttorneyFees From Funds, 87 Harv. L.Rev. 1597, 1622-23 (1974). In 1983, this court, citing the Nebraska decision in Hills, applied the common-fund doctrine to an insurance-subrogation case for the first time in Alabama.See Blue Cross Blue Shield of Alabama v. Freeman, 447 So.2d 757
(Ala.Civ.App. 1983).
In Freeman, the plaintiffs were injured in an automobile collision with State Farm's insured. Blue Cross, the plaintiffs' medical insurer, had paid the plaintiffs' medical expenses of $1,550.20. The plaintiffs sued State Farm's insured, the alleged tortfeasor, seeking compensation for, among other things, their medical expenses. Blue Cross notified the plaintiffs' attorney that it was subrogated to the plaintiffs' right to recover their medical expenses from the tortfeasor and that it expected to be paid from any recovery from the tortfeasor. Blue Cross also notified State Farm of its subrogation claim and demanded payment. State Farm suggested that Blue Cross intervene in the plaintiffs' lawsuit. The plaintiffs' attorney wrote to Blue Cross, stating that he assumed Blue Cross was abandoning the claim to be paid its subrogation interest from the plaintiffs' recovery and was, instead, pursuing its subrogation interest directly with State Farm. Blue Cross intervened in the lawsuit, and the trial court entered a conditional summary judgment in its favor.
 "The conditional judgment was not against the [tortfeasor], nor was it based upon a determination of liability of [the tortfeasor] nor upon the amount of damages plaintiffs were due to recover. The judgment was solely in favor of Blue Cross for the amount of $1,585.40 and against any funds recovered by plaintiffs from [the tortfeasor]."
Freeman, 447 So.2d at 758.
The plaintiffs and the tortfeasor settled on the day of trial. The plaintiffs moved to assess Blue Cross a pro rata share of their attorney fee, and the trial court granted the motion. Blue Cross appealed, arguing that its intervention and obtaining of a conditional judgment precluded the application of the common-fund doctrine, pursuant to the "active-participation" exception or defense to the doctrine. This court affirmed, stating the following: *Page 1120 
 "As has been previously shown, Blue Cross appeared after pleadings and principal discovery had been completed. It did not join as a subrogee of a part of plaintiffs' cause of action to aid plaintiffs in the prosecution of the suit. It appeared only to secure judgment against the insured for return of funds paid to its insured in the event the insureds were successful in their prosecution of the entire cause of action. It then retired from the field of battle, declining to assist or give aid at trial. The effect of the summary judgment against plaintiffs' recovery was to force the insured to represent the interest of Blue Cross at trial or in settlement after having told Blue Cross they would not do so. Thereafter, recovery of the fund, including the amount due Blue Cross, was obtained solely through the effort of counsel for [plaintiffs] without the active or passive participation of Blue Cross.
 "It is the opinion of this court that the mere appearance or intervention in the case by counsel for Blue Cross solely for the purpose of reducing its claim for subrogation to a judgment or lien against the recovery of the plaintiff-insureds, does not satisfy the requirement of active participation or assistance in the prosecution [of] the case. The facts in the case are clear that Blue Cross did nothing to assist in the recovery of the common fund from which it claimed $1,585.20. Rather than aid and assist plaintiffs, Blue Cross elected to collect its subrogation claim from the avails of the litigation and settlement secured solely by the efforts and expense of counsel for plaintiffs. Equity and justice require it to pay its proportionate share of attorney fees and expenses incurred by plaintiff."
Freeman, 447 So.2d at 759-60.
Since 1983, this court has applied the common-fund doctrine in two other insurance-subrogation cases. See Alston v. State Farm Mut. AutoIns. Co., 660 So.2d 1314 (Ala.Civ.App. 1995), and Lyons v. GEICO Ins.Co., 689 So.2d 182 (Ala.Civ.App. 1997). In all three cases —Freeman, Alston, and Lyons — we held that the insurer-subrogee was obligated to pay a pro rata share of its insured's attorney fee because the efforts of the insured's attorney had created a fund from which the insurer directly benefited.
In three other decisions, which were not insurance-subrogation cases, we held that the common-fund doctrine did not apply and that no attorney fee was due from the entity sought to be charged. See Collins v. TacoBell Corp., 689 So.2d 863 (Ala.Civ.App. 1996); Day v. Ramada Inn South,527 So.2d 130 (Ala.Civ.App. 1987); Henley Clarke v. Blue Cross-BlueShield of Alabama, 434 So.2d 274 (Ala.Civ.App. 1983).
In each of the foregoing cases — Collins, Day, and Henley Clarke — an attorney succeeded in having his client's medical bills paid by a third-party obligor and then sought to charge a fee to an entity that had benefited from the payment or reimbursement of the medical expenses. In Collins, the obligor was the client's employer because the medical bills were properly covered under the Workers' Compensation Act; the beneficiary who was sought to be charged with the attorney fee was the health-care provider that had gone unpaid. In Day, the obligor was Aetna, the workers' compensation carrier; the beneficiaries were Travelers, a private insurer that had mistakenly paid part of the client's medical bills, and the health-care providers whose claims were unpaid. In Henley Clarke, the obligor was Medicare and the beneficiary was Blue Cross, a private insurer that had initially paid the client's medical expenses. *Page 1121 
In all three cases, this court affirmed the trial court's determination that the attorney was not entitled to a fee from the beneficiary under the common-fund doctrine. In all three cases, this court discussed various aspects of the common-fund doctrine and concluded that one or more elements of the test for applying the doctrine did not exist. Specifically, we determined that the beneficiaries were "incidental" rather than "direct," a determination that was correct but incomplete and perhaps misleading. In Collins, Day, and Henley Clarke, this court failed to explain that what removed the cases from the operation of the common-fund doctrine was the existence of a debtor-creditor relationship rather than a subrogor-subrogee relationship.
The common-fund doctrine has no application when the relationship between the attorney's client and the party sought to be charged with the attorney fee is one of debtor and creditor. See, e.g., Maynard v.Parker, 54 Ill. App.3d 141, 145, 369 N.E.2d 352, 355, 11 Ill. Dec. 898, 901 (1977) (refusing to "extend the common fund doctrine to require a mortgagee or a furniture store or any other creditor of a plaintiff to contribute to the fees of the plaintiff's attorney if the funds recovered by litigation are used to satisfy the plaintiff's obligations"); City County of San Francisco v. Sweet, 12 Cal.4th 105, 116,48 Cal.Rptr.2d 42, 48, 906 P.2d 1196, 1203 (1995). It is almost uniformly acknowledged that the common-fund doctrine, being based upon equitable principles, does not apply in a debtor-creditor situation. See, e.g., Nealv. Stanislaus County, 141 Cal.App.3d 534, 538, 190 Cal.Rptr. 324, 326
(1983); Maynard v. Parker, supra; Bashara v. Baptist Mem'l Hosp. Sys.,685 S.W.2d 307 (Tex. 1985); Lynch v. Deaconess Med. Ctr., 113 Wn.2d 162,168, 776 P.2d 681, 684 (1989). The Alabama Supreme Court implicitly recognized this principle in Mitchell v. Huntsville Hospital, supra, when it observed that if an attorney had deducted his fee from the benefits paid to his client by the third-party obligor (Connecticut General Insurance Company), then the debtor (client) "would have still owed the [creditor] Hospital." 598 So.2d at 1360 (emphasis added).
In Collins, Day, and Henley Clarke, each beneficiary was a creditor, not a subrogee, of the client, and, unlike a subrogated insurer, the creditor's right to payment of its claim was not contingent on the client-debtor's recovery of a "fund" from which the creditor could receive payment. See Sisters of Charity v. Nichols, 157 Mont. 106,483 P.2d 279 (1971).
 "The obligation of the subrogated insurer to share in the costs of recovery from a third party wrongdoer arises because the insurer occupies the position of the insured with coextensive rights and liabilities and no creditor-debtor relationship between them. But here, unlike that situation, the hospital's claim . . . is based upon a debt owed the hospital by its patient in whose shoes it does not stand for any purpose, the debt being owed to it by its patient irrespective of the patient's rights against a third party wrongdoer."
157 Mont. at 111-12, 483 P.2d at 283. We conclude that Collins, Day, andHenley Clarke are not relevant to our inquiry because they do not involve insurance subrogation, and they do not state the correct analysis for common-fund cases dealing with subrogation.
Relying, in part, on Collins, Day, and Henley Clarke — the three cases in which this court decided that the common-fund doctrine did not apply — GEICO argues that the doctrine also does not apply here. GEICO contends that we held, in *Page 1122 Collins, Day, and Henley Clarke, that the common-fund doctrine has five required elements and, it says, Capulli failed to prove at least three of those elements. According to GEICO's interpretation of Collins,Day, and Henley Clarke, the common-fund doctrine has the following required elements: (1) there must be a "fund" from which to compensate the attorney; (2) the attorney's services must directly benefit the fund; 3) the party seeking the fee and the party to be charged with the fee must have a common interest in the fund; (4) the proceedings must be equitable in nature, and (5) the fund must be within the control of the court.
GEICO contends that in Lyons this court retreated from the five-factor analysis and required only two elements to be proved, namely: (1) that there must be a "fund" from which to compensate the attorney; and (2) that the attorney's services must directly benefit the fund. GEICO asks us to clarify Lyons by holding that a five-factor analysis is still appropriate in common-fund cases.
GEICO is correct that in Collins, Day, and Henley Clarke we stated a five-part test and in Freeman, Alston, and Lyons we used a two-part test for deciding whether the common-fund doctrine applied. GEICO is incorrect, however, in supposing that, in the latter group of cases, we retreated from the analysis used in the former group. InFreeman, Alston, and Lyons, we did not announce a new rule that only two requirements were necessary to assess an attorney fee in a common-fund case. Instead, we discussed what the party seeking an attorney fee must prove in order to establish the right to a fee in an insurance-subrogationcase. Collins, Day, and Henley Clarke were not subrogation cases.
We decline to set forth what, or how many, requirements there may be in other common-fund cases, but, based on the facts before us in this insurance-subrogation case, we conclude that there are only two requirements for applying the common-fund doctrine, namely: (1) there must be a "fund" from which to compensate the attorney; and (2) the attorney's services must directly benefit the fund. These requirements correspond to the first two parts of the five-part test GEICO argues should apply to all common-fund cases. We note that the third and fourth requirements that GEICO contends must be met in all common-fund cases will invariably be satisfied in an insurance-subrogation case, as they are here. The third requirement — that the party seeking the fee and the party to be charged with the fee must have a common interest in the fund — is necessarily satisfied by the definition of subrogation. See Roger M. Baron, Subrogation: A Pandora's Box AwaitingClosure, 41 S.D.L. Rev. 237, 238 (1996) (stating that "[s]ubrogation allows an insurer who has indemnified an insured to stand in the shoes of the insured on the insured's claim for compensation against a third party, usually a tortfeasor"). The fourth requirement — that the proceedings be equitable in nature — is necessarily satisfied in a subrogation case because subrogation is a creature of equity. Seegenerally Robert E. Keeton Alan I. Widiss, Insurance Law § 3.10 (1988).
 "The entire law of subrogation, conventional or legal, is based upon equitable principles. International Underwriters/Brokers, Inc. v. Liao, 548 So.2d 163, 165 (Ala. 1989). The equitable considerations that are the underpinnings of subrogation are (1) that the insured should not recover twice for a single injury, and (2) that the insurer should be reimbursed for payments it made that, *Page 1123 
in fairness, should be borne by the wrongdoer."
Powell v. Blue Cross Blue Shield of Alabama, 581 So.2d 772, 774 (Ala. 1990), overruled on other grounds by Ex parte State Farm Fire Cas.Co., 764 So.2d 543 (Ala. 2000).
As to the fifth requirement GEICO contends is necessary in common-fund cases — that the fund be within the control of the court — GEICO argues that the fund must be recovered as the consequence of a lawsuit by the insured against the tortfeasor. Citing Kimbrough v.Dickinson, 39 241 (Ala. 1949), International Underwriters/Brokers, Inc.v. Liao, 548 So.2d 163 (Ala. 1989), and Mitchell v. Huntsville Hospital, supra, GEICO maintains that the common-fund doctrine presupposes one party's "filing suit, bearing the burden and expense of litigation, and producing by that litigation a fund that inures to the benefit of himself and others." Brief of Appellant at 8.
We acknowledge that there is language in Kimbrough, Liao, Mitchell, and other Alabama cases, indicating that a primary reason for applying the common-fund doctrine is that the party seeking the fee has borne the burden of producing a fund that benefits the party from whom the fee is sought — and that the burden, perhaps more often than not, includes litigation. We also acknowledge that, for the three insurance-subrogation cases — Freeman, Alston, and Lyons — in which this court applied the common-fund doctrine to require the insurer to pay a pro rata share of the insured's attorney fee, the insured had actually filed a lawsuit against the alleged tortfeasor. However, neither this court nor the Alabama Supreme Court has directly addressed the question whether the common-fund doctrine can operate when the fund is produced without litigation.
We have found several cases from other jurisdictions in which the common-fund doctrine was applied to the proceeds of a settlement reached without a lawsuit's being filed. See Wensman v. Farmers Ins. Co. ofIdaho, 134 Idaho 148, 997 P.2d 609 (2000); National Union Fire Ins. Co.v. Grimes, 278 Minn. 45, 153 N.W.2d 152 (1967); Krause v. State FarmMut. Auto. Ins. Co., 184 Neb. 588, 169 N.W.2d 601 (1969); Bowen v.American Family Ins. Group, 504 N.W.2d 604 (S.D. 1993). Cf. Mountain WestFarm Bureau Mut. Ins. Co. v. Hall, 308 Mont. 29, 38 P.3d 825, 828 (2001) (reversing a summary judgment and remanding for a determination as to whether the common-fund doctrine applied, but stating that, if the doctrine was applicable, there was no requirement that the fund be the product of active litigation).
In Mountain West, supra, the party sought to be charged with an attorney fee under the common-fund doctrine argued that the doctrine did not apply because the party seeking the fee had not satisfied the following "active litigation" requirement announced in an earlier Montana Supreme Court decision: "The `common fund' concept provides that when a party through active litigation creates, reserves or increases a fund, others sharing in the fund must bear a portion of the litigation costs including reasonable attorney fees." Means v. Montana Power Co.,191 Mont. 395, 403, 625 P.2d 32, 37 (1981) (emphasis added) (quoted with approval in Murer v. State Comp. Mut. Ins. Fund, 283 Mont. 210, 223,942 P.2d 69, 76 (1997) and Mountain West, 308 Mont. at 33-34,38 P.3d at 828). The Montana court explained its earlier use of the phrase "active litigation" as follows:
 "[I]n Murer, the language preceding the `active litigation' reference appears to dispel [the] argument [against applying the common-fund doctrine when the *Page 1124 
fund is produced by an out-of-court settlement]. We stated:
 "`The United States Supreme Court created the common fund doctrine in Trustees v. Greenough (1881), 105 U.S. 527, 15 Otto. 527, 26 L.Ed. 1157, and has subsequently applied that doctrine in numerous other cases (citations omitted). These common fund doctrine cases provide that when a party has an interest in a fund in common with others and incurs legal fees in order to establish, preserve, increase, or collect that fund, then that party is entitled to reimbursement of his or her reasonable attorney fees from the proceeds of the fund itself.'
 "Murer, 283 Mont. at 222, 942 P.2d at 76. The cases cited in Murer merely illustrate the need to incur
legal fees in pursuit of the common fund rather than engage in `active litigation.' In Means and Murer, the active litigation was simply the expense-incurring mechanism employed by the parties to establish the common fund."
308 Mont. at 34, 38 P.3d at 828-29.
In Krause, the Nebraska court held:
 "[H]ere no actual suit was filed but it is undisputed that the attorney rendered valuable services in negotiations and in settlement of the case. The recovery of the substantive right to attorney's fees for services rendered should not depend upon the fortuity of filing a lawsuit."
Krause, 184 Neb. at 595, 169 N.W.2d at 605. Krause was criticized by one commentator in 1974, see Dawson, 87 Harv. L.Rev. at 1625 n. 95, but it was cited with approval in 1983 by this court in Freeman. See alsoDunn, Brady, Goebel, Ulbrich, Morel, Kombrink Hundman v. State FarmIns. Co., 100 Ill. App.3d 93, 99, 426 N.E.2d 315, 319, 55 Ill. Dec. 340, 345 (1981) (declining to apply the common-fund doctrine on another ground, but citing Krause and noting: "plaintiff is correct in asserting that no case holds that a complaint must be filed before the fund doctrine applies").
In Freeman, we stated that "an attorney, whose efforts result inrecovery of funds in which various persons have an interest, is entitled to payment from such funds of a reasonable fee for his representation of the common interest." 447 So.2d at 759 (emphasis added). We see no reason why the insured should not be entitled to an attorney fee when his attorney's efforts consist of investigation, negotiation, and settlement rather than litigation. The following is a pragmatic view of the basis for fee-sharing, pursuant to the common-fund doctrine:
 "When an insurance company lays claim to subrogation proceeds, obviously someone has to collect them, and attorneys rarely work for free. It is grossly inequitable to expect an insured, or other claimant, in the process of protecting his own interest, to protect those of the company as well and still pay counsel for his labors out of his own pocket, or out of the proceeds of the remaining funds."
8A John A. Appleman Jean Appleman, Insurance Law and Practice § 4903.85 at 335 (1981) (quoted in Guiel v. Allstate Ins. Co., 170 Vt. 464,468-69, 756 A.2d 777, 780-81 (2000)).
We hold that the right to an attorney fee in a common-fund case does not depend upon the fund's being produced as a consequence of litigation. A contrary holding might encourage unnecessary litigation.
Having determined that there are two requirements that must be satisfied in order to apply the common-fund doctrine in an insurance-subrogation case, we must now determine whether those *Page 1125 
requirements were met in this case. The first requirement, that there be a fund from which to compensate the attorney, was clearly satisfied. The fund was the $6,400 settlement Capulli received from Alfa on behalf of Zavala. The fund was "common" because, as subrogor and subrogee, both Capulli and GEICO had an interest in it.
As to the second requirement — that the services of Capulli's attorney directly benefited the fund — GEICO argues that it received no benefit from the attorney because (1) Alfa's liability was certain and the only disputed issue was the amount of Capulli's pain and suffering, (2) Alfa never denied GEICO's subrogation claim for the medical-expense payments, and (3) the settlement denied GEICO the right to intervene in an action to protect its own subrogation interest. GEICO made two of the same arguments in Sobczak v. Whitten, 75 Ill. App.3d 208,393 N.E.2d 1080, 30 Ill. Dec. 733 (1979). There, the Illinois appellate court stated, and answered, the arguments as follows:
 "GEICO asserts that the fund doctrine does not apply here because it realized no actual benefit from the attorney's services as liability was clear and payment by defendant was certain. In this case the injury to plaintiffs occurred on August 22, 1976. On September 22, 1976 plaintiffs' complaint was filed. It appears from the record that while liability was contested in the defendant's answer to the plaintiffs' complaint, the defendant intended to settle from the suit's inception. However, it is apparent that negotiations were required to bring the defendant's intentions to fruition, as ancillary legal action was evidently anticipated, and the defendant wanted to minimize his exposure to liability in such action. It was only after agreement on those issues was reached, and after plaintiffs documented the extent of their injuries to the defendants that the settlement occurred. The record does not support GEICO's position that settlement was a foregone conclusion at the time the suit was filed. We believe that the trial court was correct in its determination that plaintiffs' counsel played a substantial role in securing the settlement."
75 Ill. App.3d at 213-14, 393 N.E.2d at 1083-84, 30 Ill. Dec. at 737. Seealso Guiel v. Allstate Ins. Co., 170 Vt. at 471, 756 A.2d at 782 (stating that "notwithstanding its bare statement that liability was conceded, [the subrogee] plainly benefited from the efforts of [the subrogor's] attorney in securing its subrogation claim"); Bowen v. American FamilyIns. Group, 504 N.W.2d at 607 (holding that "[w]hile [the subrogee] argues that its own communication with [the tortfeasor's insurance company] insured the protection of its subrogation interest, it was [the subrogor's] settlement with [the tortfeasor's insurer] that made the payment of [the subrogee's] interest possible"); United Services Auto. Ass'nv. Hills, 172 Neb. at 134, 109 N.W.2d at 178 (stating that even if the subrogee indicates an intention to pursue the enforcement of its subrogation interest in some other manner, once it seeks collection of its claim from the settlement secured by the efforts of the subrogor's attorney, it must pay a proportionate share of the attorney fee). Cf.Wensman v. Farmers Ins. Co. of Idaho, 134 Idaho at 152, 997 P.2d. at 613 (reversing a summary judgment for the insured because there was a genuine issue of material fact as to whether the attorney's actions resulted in any benefit to the subrogee when the record contained evidence that the tortfeasor's insurer had made the decision to pay the subrogated claim before any effort had been expended by the insured's attorney).
The record demonstrates that, as was the case in Sobczak v. Whitten, *Page 1126 
Capulli's attorney investigated the facts to establish liability and documented the extent of his client's injuries, sending Capulli's medical bills to the tortfeasor's insurer and thereby convincing it to settle her personal-injury claim. Although the record does not contain a breakdown of the time the attorney spent on the case, we conclude that GEICO failed to rebut Capulli's prima facie showing that her attorney's services resulted in a benefit to the common fund. Since GEICO made no argument in the circuit court that the amount of the fee was unreasonable, and it concedes that the one-third contingency fee it was ordered to pay is reasonable, we will not address the amount or reasonableness of the fee.Cf. Guiel v. Allstate Ins. Co., 170 Vt. at 474-75, 756 A.2d at 784-85
(citing Amica Mut. Ins. Co. v. Maloney, 120 N.M. 523, 530, 903 P.2d 834,841 (1995), for the proposition that because "insurers neither presented evidence that contingency fees were unreasonable in relation to amount of work done to achieve final settlement nor suggested that contingency fee agreement was inconsistent with standard industry practice in such cases," no remand was necessary). See generally Edelman Combs v. Law,663 So.2d 957 (Ala. 1995) (discussing the bases for setting fees in class-action common-fund cases); Sobczak v. Whitten,75 Ill. App.3d at 214, 393 N.E.2d at 1084, 30 Ill. Dec. at 737 (stating some of the factors for determining whether a fee in a common-fund subrogation case is excessive); Krause v. State Farm Mut. Auto Ins. Co., 184 Neb. at 595-96,169 N.W.2d at 605-06 (same).
As to GEICO's argument that the settlement denied it the right to intervene in an action to protect its own subrogation interest, we hold that "the absence of a right of the insurer to participate in or control the insured's litigation against third parties is not fatal to application of the `common fund' doctrine." See Mathews v. Bankers Life Cas. Co., 690 F. Supp. 984, 987 (M.D.Ala. 1988). Moreover, intervention alone would not have prevented the imposition of the common-fund doctrine. See Freeman, supra; Alston, supra.
GEICO argues that, if it received a benefit at all from the services of Capulli's attorney, the benefit was merely incidental rather than direct. That argument states a defense to the application of the common-fund doctrine. See Parker, 31 Ind. L. Rev. at 333. There are two defenses to the application of the doctrine. Id. The first is the "active-participation" defense, i.e., that the party sought to be charged with the attorney fee actively participated in producing the fund.
 "This defense requires that the insurer prove that it actively participated in or its efforts substantially contributed to the creation or preservation of the subrogated fund. The extent to which an insurer must actively participate or contribute to the recovery to avoid application of the fund doctrine varies from jurisdiction to jurisdiction. Some jurisdictions require very little participation . . . .
 "Other jurisdictions require substantially more participation or contribution and define the defense accordingly:
 "`[I]n order for the insurer to claim active participation in a settlement, it must demonstrate that it participated in the settlement negotiations with the insured for the entire settlement and substantially contributed to that total settlement award. Similarly, to show active participation in a judgment against the tortfeasor, the insurer must show that it intervened in the suit and participated in the case . . . or at the very least demonstrate that *Page 1127 
it significantly contributed to discovery.'
 "Whether the insurer has substantially participated or contributed under this definition turns upon whether it performed services in aid of the recovery of the fund."
Id. at 335 (footnotes omitted; citing this court's decisions in Alston
and Freeman). GEICO does not argue that it was an active participant; under the analysis of Alston and Freeman, such an argument would be unsuccessful.
The second defense is the "incidental-benefit" defense, i.e., that the party sought to be charged with the attorney fee was merely an incidental, and not a direct, beneficiary of the attorney's services in producing the fund. See CNA Ins. Cos. v. Johnson Galleries of Opelika,Inc., 639 So.2d 1355 (Ala. 1995); Lyons v. GEICO, 689 So.2d at 184.[1]
GEICO points out that Capulli admitted, in answers to its interrogatories, that she was unaware of GEICO's subrogation interest until after the settlement. GEICO contends that Capulli's being unaware of its subrogation interest precludes her from maintaining that, in seeking a recovery for her injuries, she intended to benefit GEICO.
We reject that argument. GEICO had a subrogation interest as a matter of law. The record affirmatively shows that Capulli's attorney acknowledged that interest. Capulli's subjective intent to benefit that interest is immaterial.
We hold that Capulli established all the elements of the common-fund doctrine required in an insurance-subrogation case and that she was entitled to a judgment as a matter of law. The judgment of the circuit court is affirmed.
AFFIRMED.
YATES, P.J., and PITTMAN, J., concur.
THOMPSON and MURDOCK, JJ., concur in the result.
[1] In CNA Insurance Cos. v. Johnson Galleries of Opelika, Inc., the court stated that if the parties have an adversarial relationship the actions of one cannot confer a direct benefit on the other.
 "The requirement that the relationship between the client and the passive beneficiaries of the fund not be adversarial is based on the general proposition that the same attorney may not represent adverse parties in the same action. Consequently, the relationship is not adversarial unless the subrogor is denying that subrogee has a subrogated interest in the proceeds. Conflicts, such as disputes over the right to intervene, distribution of the funds or as between the subrogee and the attorney as to the attorney's right to, or amount of a fee, do not involve the type of adverse relationship which would preclude application of the common fund doctrine. See Lyons v. GEICO Ins. Co., 689 So.2d 182, 184 (Ala.Civ.App. 1997)."
Parker, 31 Ind. L.Rev. at 332 n. 101.