THOMAS, Judge.
 

 Progressive Specialty Insurance Company (“Progressive”) appeals from a summary judgment in favor of Deborah Wilkerson in an action alleging breach of a settlement agreement. We reverse.
 

 The pertinent facts in this case are undisputed. On November 16, 2003, Wilkerson was injured in a motor-vehicle accident with Thomas Killeen. Wilkerson’s vehicle was insured by State Farm Insurance Company (“State Farm”), and Killeen’s vehicle was insured by Progressive. State Farm paid Wilkerson $5,000 in medical-payments benefits. On June 14, 2005, Wilkerson sued Killeen, alleging negligence and wantonness.
 

 Ten days later, on June 24, 2005, State Farm initiated an inter-carrier arbitration proceeding with Arbitration Forums, Inc., seeking to recover from Progressive the $5,000 payment it had made to Wilkerson. State Farm contended:
 

 “This loss occurred on November 16, 2003 in Mobile, AL. [Progressive’s insured] ran a red light and hit [State Farm’s insured]. Liability is not an issue as [Progressive and its insured have] accepted 100% liability for this accident. This file is being placed in arbitration to protect the statute of limitations for the medical payments coverage (MPC).
 

 “As a result of the ... negligence [of Progressive’s insured], [State Farm’s insured] driver received injuries. The medical bills incurred were reasonable and necessary. [State Farm] paid the medical expenses incurred and is seeking reimbursement accordingly.
 

 “[Progressive’s insured] was the sole proximate cause of this loss. [He] was negligent for disregarding a traffic signal, driver inattention and improper lookout. Liability is not in dispute. [Progressive] was put on notice of our subrogation rights (see evidence). [State Farm] requests the panel grant recovery of $5,000 for the medical payments issued.”
 

 On August 8, 2006, Wilkerson settled her lawsuit against Killeen. She agreed to release Killeen and Progressive from all liability arising out of the occurrence made the basis of the lawsuit in return for $24,000. The agreement provided, in pertinent part:
 

 “[T]he undersigned parties [including Wilkerson] agree and understand that they have the full responsibility to satisfy any valid subrogation claims (including, but not limited to medical-payment liens or health-insurance liens) or
 
 *1197
 
 medical liens, and that the parties being released in this document [including Progressive] have no further or other obligations to any party arising out of the accident alleged in the complaint or the injuries or damages which arose thereafter. The undersigned parties agree to indemnify and hold harmless ... Killeen and Progressive ... against any further subrogation claims. If any further claims or liens are asserted against the proceeds of this settlement or against the party being released herein for injuries or damages arising out of the incident described in the complaint, the undersigned agrees to satisfy and take full responsibility for such claims, and to indemnify ... Kil-leen, his insurers, successors or assigns against any such claims.”
 

 After the settlement, Progressive filed a response to State Farm’s arbitration contentions, setting forth the affirmative defenses of release and indemnity based on the settlement agreement. On August 17, 2006, the arbitrator entered an award in favor of State Farm in the amount of $5,000. In explaining its decision, the arbitrator stated:
 

 “[Progressive] had actual notice of [State Farm’s] subrogation interest on 1-14-05. It does not appear that [State Farm] was a party to [the settlement agreement or release]. Progressive should seek indemnification from the parties to any agreement.”
 

 On December 13, 2006, Progressive wrote Wilkerson the following letter, requesting that Wilkerson “remit reimbursement to State Farm to satisfy [State Farm’s] interest in [her] case”:
 

 “As you are already aware, we recently reached a settlement agreement with you on behalf of our insured in regards to the above referenced loss. This case was finalized with a full ‘Release and Settlement Agreement’ with you on August 8, 2006....
 

 “Please be advised that Progressive Specialty Insurance Company has recently been notified that your insurance carrier, State Farm, seeks to recover the $5,000.00 paid on your behalf under your Medical Payments coverage. The release you signed, as well as the signed settlement distribution agreement prepared by your attorney, outlines that you are personally responsible for any and all outstanding medical expenses, subrogation interests and/or liens out of the settlement proceeds. Therefore, at this time, we request that you immediately remit reimbursement to State Farm to satisfy their interest in your case.
 

 “.... Should you refuse to reimburse the money owed back to State Farm, we will have no choice but to honor the binding arbitration ruling and reimburse these funds on your behalf. We will then immediately seek recovery plus cost from you via legal action.”
 

 On January 13, 2007, Wilkerson’s attorney paid State Farm $3,165, explaining the payment in the following letter:
 

 “Please find enclosed my client’s check in the amount of $3,165.00. This is payment in full of the subrogation of $5,000 that was made payable to Deborah Wilkerson as a result of her accident on 11/16/03.
 

 “The Alabama State Law provides that when your insured uses an attorney to collect money on her behalf that the insurance company has to pay a pro rata share of attorney fees and court costs. In this particular instance our office charged a 1/3 attorney’s fee and there was a total of $586.05 in costs bringing a total of fees and costs to 36.7% of the total recovery. When you subtract 36.7% from the $5,000 in med pay your
 
 *1198
 
 claim of subrogation amounts to $8,165.00. Find enclosed this amount as payment in full of the subrogation claim on Ms. Wilkerson.”
 

 On January 17, 2007,
 
 State
 
 Farm notified Progressive that it had received a partial payment of $3,165 on its subrogation interest and demanded that Progressive pay the balance of the $5,000 arbitration award. On March 27, 2007, Progressive paid State Farm $1,835. On September 12, 2007 Progressive sued Wilkerson in the Mobile District Court seeking recovery from Wilkerson of the $1,835 it had paid to State Farm.
 

 The district court entered a judgment in favor of Wilkerson on July 16, 2007; Progressive appealed that judgment to the Mobile Circuit Court. Both parties moved for a summary judgment in the circuit court. On January 11, 2008, the circuit court denied Progressive’s motion, granted Wilkerson’s motion, and entered a summary judgment in favor of Wilkerson. Progressive timely appealed to this court.
 

 In the present case, as in
 
 Norwest Mortgage, Inc. v. Nationwide Mutual Fire Insurance Co.,
 
 718 So.2d 15, 16 (Ala.1998), the parties agreed that “the material facts were undisputed and that the action involved a pure question of law that should be decided on cross motions for [a] summary judgment.”
 

 “A summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56, Ala. R. Civ. P. We review the trial court’s ruling on a motion for a summary judgment de novo.
 
 Bruce v. Cole,
 
 854 So.2d 47, 54 (Ala.2003). In the present case, our review is de novo for the additional reason that the material facts are undisputed and the only issue presented involves a pure question of law.
 
 See Christian v. Murray,
 
 915 So.2d 23, 25 (Ala.2005).”
 

 Poffenbarger v. Merit Energy Co.,
 
 972 So.2d 792, 795 (Ala.2007).
 

 Initially, we
 
 note
 
 that Wilkerson frames the issue presented in this case as whether State Farm is entitled to recover the full amount of its $5,000 medical-payments subrogation interest from her or whether, instead, State Farm is entitled to recover only $3,165 of its subrogation interest, with Wilkerson’s being authorized to retain the $1,835 balance as State Farm’s pro rata share of her attorney fee and costs, pursuant to the common-fund doctrine as enunciated in
 
 Government Employees Insurance Co. v. Capulli,
 
 859 So.2d 1115 (Ala.Civ.App.2002). In
 
 Capulli,
 
 this court explained:
 

 “The general, or ‘American,’ rule is that attorney fees may be recovered from a source other than the attorney’s client, or the one who contracted to pay the fee, only when ‘authorized by statute, when provided in a contract, or by special equity, such as in a proceeding where the efforts of an attorney create a fund out of which fees may be paid.’
 
 Eagerton v. Williams,
 
 433 So.2d 436, 450 (Ala.1983). There is no statutory authorization for awarding [the insured] an attorney fee from [the insurer’s] sub-rogation interest, and there is no contract between [the insured] or her attorney and [the insurer] that provides for the payment of attorney fees. Therefore, the only basis for an exception to the general rule is the ‘special equity’ exception. ‘The “common fund” [doctrine] is merely a particular instance of the “special equity” exception to the rule that attorney fees may not ordinarily be recovered.’
 
 Mitchell v. Huntsville Hosp.,
 
 598 So.2d 1358, 1361 (Ala.1992).
 

 “The common-fund doctrine in insurance-subrogation cases is based on the
 
 *1199
 
 equitable notion that, because an insurer is entitled to share, to the extent of its subrogation interest, in any recovery its insured achieves against a tortfeasor, the insurer should bear a proportionate share of the burden of achieving that recovery — including a pro rata share of the insured’s attorney fee.
 
 See generally
 
 Johnny Parker,
 
 The Common Fund Doctrine: Coming of Age in the Law of Insurance Subrogation,
 
 31 Ind. L.Rev. 313, 320-25 (1998); Annot.,
 
 Right of Attorney for Holder of Property Insurance to Fee out of Insurer’s Share of Recovery from Tortfeasor, 2
 
 A.L.R.3d 1441 (1965).”
 

 859 So.2d at 1118. Although the common-fund doctrine and its exceptions would be pertinent to any dispute between
 
 State Farm
 
 and Wilkerson, they are immaterial to this dispute between
 
 Progressive
 
 and Wilkerson. The sole issue that concerns us on this appeal is whether Progressive established that Wilkerson breached the settlement agreement, an agreement to which State Farm was not a party. Wilkerson’s arguments that State Farm and Progressive were engaged in an “artifice,” or a conspiracy to avoid the common-fund doctrine, and that Progressive “voluntarily” made an “unnecessary” payment of $1,835 to State Farm are made for the first time on appeal and will not be considered.
 
 See Carraway Methodist Health Sys. v. Wise,
 
 986 So.2d 387, 398 n. 8 (Ala.2007).
 

 Progressive argued in the circuit court and now maintains on appeal that it established all the elements of its claim alleging a breach of the parties’ settlement agreement, and, accordingly, it says, the circuit court erred in denying its motion for a summary judgment and in entering a summary judgment in favor of Wilkerson. To prevail on its breach-of-contract claim, Progressive was required to prove “(1) the existence of a valid contract binding the parties in the action, (2) [the plaintiffs] own performance under the contract, (3) the defendant’s nonperformance, and (4) damages.”
 
 Southern Med. Health Sys., Inc. v. Vaughn,
 
 669 So.2d 98, 99 (Ala.1995).
 

 With respect to the first element, Progressive made a prima facie showing that the settlement agreement was a valid and binding contract; Wilkerson did not challenge the validity of the agreement or assert that it was the product of fraud or a conspiracy. “‘A validly executed settlement agreement is as binding on the parties as any other contract.’ ”
 
 Billy Barnes Enters., Inc. v. Williams,
 
 982 So.2d 494, 498 (Ala.2007) (quoting
 
 Grayson v. Hanson,
 
 843 So.2d 146, 150 (Ala.2002)). “‘A settlement agreement once entered into cannot be repudiated by either party and will be summarily enforced.’”
 
 Mays v. Julian LeCraw & Co.,
 
 807 So.2d 551, 554 (Ala.Civ.App.2001) (quoting
 
 Nero v. Chastang,
 
 358 So.2d 740, 743 (Ala.Civ.App.1978)). The settlement agreement states, in pertinent part:
 

 “[T]he undersigned parties [including Wilkerson] agree and understand that they have the full responsibility to satisfy any valid subrogation claims (including, but not limited to medical-payment liens or health-insurance liens) or medical liens, and that the parties being released in this document [including Progressive] have no further or other obligations to any party arising out of the accident alleged in the complaint or the injuries or damages which arose thereafter.
 
 The undersigned parties agree to indemnify and hold harmless Killeen and Progressive against any further subrogation claims. If any farther claims or liens are
 
 as
 
 serted against the proceeds of this settlement or against the party being released herein for injuries or damages
 
 
 *1200
 

 arising out of the incident described in the complaint, the undersigned agrees to satisfy and take full responsibility for such claims, and to indemnify ... Killeen, his insurers, successors or assigns against any such claims.”
 

 (Emphasis added.) As to the second element, Progressive established that it had paid $24,000 in settlement funds to Wilkerson and that it had paid $1,835 to State Farm to satisfy State Farm’s medical-payments subrogation interest.
 

 With respect to the third element, Progressive established that State Farm had a valid subrogation claim against Wilkerson’s settlement funds to the extent of the $5,000 it had paid Wilkerson in medical-payments benefits; that, from her settlement with Killeen and Progressive, Wilkerson had reimbursed State Farm $8,165 of the $5,000; that Wilkerson had refused to pay the $1,835 balance, maintaining that she was entitled to retain that amount as State Farm’s pro rata share of her attorney fee and costs pursuant to the common-fund doctrine; that State Farm, pursuant to its arbitration award, had demanded payment of the $1,835 balance from Progressive; and that Progressive had paid State Farm $1,835. Progressive established the fourth element by proving that it had been damaged by having to pay State Farm $1,835.
 

 We hold that the circuit court erred by denying Progressive’s motion for a summary judgment and by entering a summary judgment for Wilkerson. The plain wording of the parties’ settlement agreement required Wilkerson to indemnify and hold Progressive harmless against “any further subrogation claims,” including medical-payment subrogation claims, and to “satisfy and take full responsibility for such claims.” The $5,000 arbitration award in favor of State Farm was based on an arbitrator’s ruling that State Farm had a valid subrogation claim against Progressive. Progressive was bound by that ruling. Pursuant to the Alabama Arbitration Act, § 6-0-1 et seq., Ala.Code 1975, the arbitration award was “conclusive between the parties thereto,” § 6-6-14, and had “the force and effect of a judgment, upon which execution may issue as in other cases,” § 6-6-12.
 

 Wilkerson may have had a colorable claim, in a dispute
 
 with State Farm,
 
 that she was entitled to retain a portion of her insurer’s $5,000 subrogation interest as the insurer’s pro rata share of her attorney fee and costs. She had no colorable claim, however, in a dispute
 
 with Progressive,
 
 either that the parties’ settlement agreement did not require her to indemnify and hold Progressive harmless “against any further subrogation claims” or that she had “satisf[ied] and take[n] full responsibility for” such subrogation claims. Wilkerson’s refusal to indemnify Progressive for that portion of State Farm’s subrogation claim that Wilkerson had left unpaid in reliance upon the common-fund doctrine, and that Progressive had been required by the arbitration award to pay, constituted a breach of the parties’ settlement agreement.
 

 The judgment of the Mobile Circuit Court is reversed, and the cause is remanded with instructions to enter a judgment in favor of Progressive.
 

 REVERSED AND REMANDED WITH INSTRUCTIONS.
 

 PITTMAN, BRYAN, and MOORE, JJ., concur.
 

 THOMPSON, P.J., dissents, without writing.